## BENTON vs. THE STATE.

1. CRIMINAL LAW: *Instructions.*

   As to circumstantial evidence, reasonable doubt, etc., see the opinion.

2. ——: *Practice.*

   It is in the discretion of the court to determine whether the jury shall take the instructions with them when they retire.

3. ——: *Instruction.*

   On a trial for murder in the first degree where there is nothing in the defense or evidence to indicate that the lower grades of homicide are involved, the judge need not define them in a general charge to the jury.

4. EVIDENCE: *Competency.*

   A witness cannot be impeached by evidence tending to show that a third person was prejudiced against the accused, and had threatened to procure the witness to testify against him.

5. JURORS: *Challenge, etc.*

   If, after the court has erroneously overruled the challenge of a juror for cause, the defendant elects to challenge him peremptorily, and the record shows that he did not exhaust his peremptory challenges, he cannot avail himself of the error. (As to disqualification by reason of bias, etc., see the opinion.)

6. CRIMINAL LAW: *Accused entitled to accompany the jury at a view.*

   If, during the progress of a criminal trial, a view of the locality where the crime is alleged to have been committed is ordered by the court, the defendant must be permitted to accompany the jury.

APPEAL from *Pulaski* Circuit Court.

Hon. JOHN J. CLENDENIN, Circuit Judge.

*Terry, Terry & Vaughn,* for appellant.

Prisoner should have been present when his case was set for trial below. Bishop's Crim. Pro., 265–9, 270, and cases cited;

*Henry* v. *State*, 33 Ala., 389; *Hall* v. *State*, 40 ib., 698–705; *Kelly* v. *State*, 3 Sm. and Mar., 518–28; *Prim* v. *Com.*, 6 Harris, (Tenn.,) 103; *Hamilton* v. *Com.*, 4 ib., 129; *Hooker* v. *Com.*, 13 Grat., 763; 2d Leading Crim. Ca., 451, *et seq.*; *Sneed* v. *State*, 5 Ark., 431; *Osburne* v. *State*, 24 Ark., 635; *Sweeden* v. *State*, 19 Ark., 205; as in case of a motion for a new trial; 1 Bishop Crim. Pro., 277 and n.; 31 Maine, 592.

The second instruction given on part of the State was calculated to mislead. *Bertrand* v. *Byrd*, 5 Ark., 651; *Worthington* v. *Curd*, 15 ib., 492; *Armstead* v. *Brooks*, 18 ib., 521.

Jury should have been allowed to take instruction to their room on defendant's request. See *Hurley* v. *State*, MSS. op., Dec. Term., 1874.

Court should have given the whole law of homicide to the jury. Gantt's Digest, sec. 1930; *Stanton* v. *State*, 13 Ark., 317; 3 Whar. Am. Crim. Law., sec. 3162, n. "*c.*"

Robertson's testimony erroneously excluded. 1 Greenlf. on Ev., 462, and cases cited; *Newcombe* v. *State*, 37 Miss., 383.

The court erred in deciding ———— to be competent as a juror. 1 Bish. Crim. Pro., 909–911; 3 Wharton, 3080; *Stewart* v. *State*, 13 Ark., 721; 13 Sm. and Mar., 500; *Vermilyear's case*, 6 Cowan, N. Y., 562; 7 Cowan, 108; 1 Burr's Trial, 370; *Mathews' case*, 4 Wend., 229.

Defendant should have had a list of the jurors a reasonable time before trial. *Stewart* v. *State*, 13 Ark., 735–6–7; *Atkins* v. *The State*, ib., 581; 1 Chitty Crim. Law, 517; 4 Blackstone, 351.

The defendant should have been present when the jury viewed the premises. 3 Wharton's Crim. Law, 3160; Const. of 1874, art. 2, sec. 10; *State* v. *Bertin*, 24 La. an. 46; *Eastwood* v. *People*, 3 Par. Crim. Rep., 25–52; Roscoe's Crim. Ev., (6 Am. Ed.,) 29, note 1. And the presence of the judge at the view was

indispensible. Bishop Crim. Law, vol. 1, sec. 1044. The right to be present could not be waived by defendant. *Wilson* v. *State*, 16 Ark., 601–610; *Bond* v. *State*, 17 ib., 290; *Oliver* v. *State*, ib., 508; *Brown* v. *State*, 11 Ind., 496. Certainly not by simple failure to object. *Newcombe* v. *State*, 37 Miss., 383; *Douglas' case*, 5 Wis., 820; *Bivins* v. *State*, 6 Eng., 455–7; *Wilson* v. *State, supra; Sweeden* v. *State, supra; Com.* v. *Andrews*, 3 Mass., 132; *People* v. *McKay*, 18 Johnson, 215.

See also Const. U. S., 6th article of amendments, and *Easen* v. *State*, 6 Eng., 481; 1 Bish. Crim. Pr., secs. 89, 92, 94.

The qualifications of a juror cannot be changed by statute, or made matter of discretion in the judge. 1 vol. Bishop's Crim. Procedure.

In criminal cases an error in written instructions need not be excepted to, and made grounds for a motion for a new trial, in order to be corrected on appeal. Civil and Criminal Codes compared.

Error in decision as to a juror's qualifications is not waived by peremptory challenge. 3 Gilman, 378; 2 Virginia Cases, 299. As to juror's qualifications, see 4 Wend. N. Y., 242; and on conflicting instructions, 31 Ind., 480.

It is not necessary to show that the defendant was injured by violation of a well-known principle of law, or the constitution. *People* v. *Ransom*, 7 N. Hamp., 287.

Secs. 1927–28 of Gantt's Digest are against a common law right, and must be strictly construed. Cooly's Const. Lim., 74 *et seq.; Veazie* v. *China*, 50 Maine, 518; *People* v. *Schemerhorn*, 19 Barb. 558; 21 Pick., 67; *Rex* v. *Locksdale*, 1 Burr., 447. As to their constitutionality, see *Murphy* v. *State*, 24 Miss,, 590; *Newcombe* v. *State*, 37 ib., 383–397. They were repealed by the constitution of 1874. Schedule, sec 1, art. 19; *Pulaski County* v. *Dower*, 10 Ark., 589; *State* v. *Walker*, 23 ib., 304.

A contradictory instruction will not cure one plainly and materially erroneous. 1 Whar. 3248; *State* v. *McClear*, 5 Nev., 132; *People* v. *Bodine*, 1 Davis, 280; *Clemm* v. *State*, 31 Ind., 480.

Further, that the defendant cannot waive a constitutional right, see *Werk* v. *State*, 2 Ohio, 296; *Cancean* v. *People*, 18 N. Y., 128; *Wilson* v. *State*, 16 Ark., 601; *Bond* v. *State*, 17 ib., 290; Cooley's Const. Lim., 319 and cases; *Brown* v. *State*, 11 Ind., 496.

*Hughes, Attorney General,* for appellee.

Jury only entitled to take to their room papers used as evidence, sec. 1492 G. D.

The case did not require a charge of the whole law of homicide, and, it was not asked, Omission to charge, no ground of new trial, if the charges actually given were correct and applicable to the issue. *Palmore* v. *State*, MSS.; *Waters* v. *Bristol*, 26 Con., 348; *Obey* v. *Chudsey*, 7 Rhode Island, 224; see also *People* v. *Gray*, 5 Wend., 20.

Error must be material and to the prejudice of defendant. (*Ballew* v. *State*, 1 Green's Law Report, crim., 607;) *Harris* v. *State*, ib., 601; *Taff* v. *State*, ib., 629.

The action of the court in passing upon the fitness of a juror is matter of discretion, unless it be grossly abused. Crim. Code, sec. 1911, G. D.

No list of jurors is required to be furnished prisoner or counsel. G. D., sec's 3694 and 1895.

In support of the view of the premises by the jury in the absence of prisoner, cited; G. D., sec. 1887; Cooley's Const. Lim, 318; *Sneed* v. *State*, 5 Ark., 431; *Cole* v. *State* 10th, 318. The view of the ground was not in the nature of evidence and no part of the trial.

The instructions taken all together were correct and liberal to defendant.

Upon the points arising in this case the following additional authorities were cited by the State: Gantt's Digest, sections 2130, 2144, 1100, 1970, 4553, 1978, 1979, 4693, 4694, 4699, 4688, 1987, 1968-69-70; *Anderson* v. *State*, 5 Ark., 445; *Lyon* v. *Evans*, 10 Ark., 349; *Boyd* v. *Tucker*, 3 Ark., 451; *Telham* v. *State Bank*, 4 Ark., 202; *Mills* v. *Jones & Reed*, 27 Ark., 506; *Patterson* v. *Graham*, 23 Ark., 380; *People* v. *Berdine*, 1 Denio, N. Y; *Hopkins* v. *Chm.*, 3rd Bush., 1 Greenleaf, sec. 462.

ENGLISH, CH. J.:

John Benton was tried on an indictment for murder, in the Pulaski Circuit Court, found guilty of murder in the first degree, by the jury, a motion for a new trial was overruled, and he was sentenced to suffer the penalty of death. An appeal was allowed by the Chief Justice, on account of probable errors appearing in the transcript of the record.

The nine causes assigned in the motion for a new trial will be disposed of in the order in which they appear in the motion.

*First*—That the defendant was not personally present when his case was set for trial, being then confined in the county jail. On this point the bill of exceptions shows nothing. The record entries show that the indictment was returned into court, by the grand jury, 13th April, 1875; on the 18th June following the cause was continued to the next term, on the application of the prisoner, after he had been furnished with a copy of the indictment, arraigned and pleaded not guilty. The first entry, at the next term, appearing in the transcript, bears date 25th October, 1875, and shows that the State was present by her Prosecuting Attorney, and the prisoner personally present in court, in charge

of the Sheriff, and represented by four attorneys. And this case now coming on to be heard, and both parties announcing themselves ready for trial, the names of the jurors on the regular panel are placed in a box, etc., and the entry proceeds to show the making up of a jury.

There is nothing in this assignment.

*Second*—That the court erred in giving the second instruction asked for by the State, and against the objection of defendant.

The defendant was charged with the murder of Bob Steigall. The *corpus delicti* was proven, but the State attempted to establish, by circumstantial evidence, that the defendant committed the crime. The Prosecuting Attorney asked for two instructions. The counsel for the prisoner made no objection to the first, but objected to the second, and the objection was overruled and the instruction given. The two instructions are connected, and the second is better understood when read in connection with the first. They follow:

*First*—The court instructs the jury that in cases of circumstantial evidence, like the present, the law does not demand absolute mathematical or metaphysical certainty; but if all the circumstances established by the proof before them, taken together, convince their minds beyond a reasonable and rational doubt of the defendant's guilt, they will be justified in finding a verdict against him.

*Second*—The doubt which will justify a verdict of acquittal is not every captious or far-fetched doubt, but must be a reasonable and rational doubt left upon the minds of the jury after a careful investigation of all the facts proven in the case, and if after such examination of such evidence, they can say as men, we verily believe, beyond a reasonable doubt, the defendant guilty as charged, and their hearts and consciences prove such decision, they will be justified in finding a verdict of guilty against the defendant.

The counsel for appellant have criticised the words, "can say as *men*," as used in the second instruction. They urge that this instruction was calculated to mislead the jury, to indicate to them that they might form their conclusion, as to the guilt or innocense of the prisoner, as *men* and not as *jurors* acting under oath. The counsel say that as *men* they might be convinced by hearing evidence, but as *jurors* they could not, etc.

The criticism is not warranted when the expression complained of is considered in connection with the language which precedes and that which follows it.

The first instruction relates to the certainty which the law requires in cases of circumstantial evidence, and omitting tautological words, the jury were told, in substance, that the law did not demand absolute or mathematical certainty, but if all the circumstances in proof convinced their minds, beyond a reasonable doubt, of the defendant's guilt, they might so declare.

The object of the second instruction was to explain to the jury what was meant by a reasonable doubt. It was not to be captious or farfetched, but a doubt of prisoner's guilt left upon the minds of the jury after a careful investigation of all the facts proven in the case, etc. Supposing them to be men of ordinary intelligence there was nothing in the instruction calculated to induce them to infer that they were at liberty to disregard their oaths as jurors, or to act as men in the streets, not upon oath, in arriving at a conclusion as to the guilt or innocence of the defendant. See Burrill on Cir. Ev., 198-200.

The prosecuting attorney had as well left the word "metaphysical" out of the first instruction. The law does not demand mathematical, but does require moral certainty of guilt, to warrant a conviction on circumstantial evidence. *Metaphysical* is not the equivalent of *mathematical*.

*Third*—That the court erred in not allowing the jury, upon motion of defendant, to take with them to their consultation

room the instructions given them on the part of the State and defendant.

The bill of exceptions is silent as to this assignment, but, if it be true, the court had the discretion to refuse or permit the jury to take with them the instructions on retiring to consider of their verdict, as held in *James Hurley* v. *The State*, 29 Ark., 17.

*Fourth*—That the court erred in failing to read to the jury as part of its charge the whole law applicable to homicide, but confined itself in the charge to cases of murder in the first and second degrees.

It appears by the bill of exceptions that after the court had given the two instructions asked for the State, and nine drafted and moved for the prisoner, being all that were asked on his behalf, the court, of its own motion, gave a general charge to the jury, which is set out in the bill of exceptions.

The court, after stating the issue formed by the indictment and plea, gave, in the language of the statute, the definition of murder, malice expressed and implied, and the distinction between murder in the first and second degrees, said to the jury that the case turned upon circumstantial evidence, and explained to them the difference between direct and circumstantial evidence, etc. There is a paragraph in this general charge which will be more particularly noticed below.

No exception appears to have been taken to the charge at the time it was given, and the only objection made to it in the motion for a new trial is that it did not go far enough; that the judge did not read to the jury the whole law applicable to homicide, but such only as applies to cases of murder in the first and second degrees. The objection implies the assertion that the judge should have gone further, and read to the jury the law applicable to voluntary and involuntary manslaughter, justifiable and excusable homicide, etc.

Section 23, art. 7, of the present Constitution declares that "Judges shall not charge juries with regard to matters of fact, but shall declare the law, and, in jury trials, shall reduce their charge to writing, on the request of either party."

Section 1930, Gantt's Digest, p. 421, which remains in force so far as not in conflict with the constitutional provision copied above, provides that "when the evidence is concluded the court shall, on motion of either party, instruct the jury on the law applicable to the case, which shall always be given in writing."

It is the province of the court to give in charge to the jury such principles of the law as it may deem applicable to the case. If a party desires other instructions he may move them, and the court will give, or refuse them, according to its judgment of their correctness or applicability. If refused, the party asking them may except to the opinion of the court. If objected to by the opposite party and given, he may except. So either party may except to the general charge of the court. If the charge be the enunciation of several distinct principles, either party may except to any one or more of them. If all are deemed objectionable, each and all of them may be excepted to. But the exception should not be general to a number of distinct enunciations, but specific. *James Hurley* v. *State*, 29 Ark., 17; *McKenzie* v. *State*, 26 Ark., 342; *Cox* v. *State*, 41 Texas, 1.

But in this case, the objection to the general charge of the court is, that it should have gone further, and defined the lower grades of homicides.

The man named in the indictment and called by the witness Bob Steigall, was found on the morning 28th March, 1875, lying dead in a road near the northeast corner of a block of ground situated between the Federal cemetery and the Fourche, south of Little Rock, on which block the appellant resided. The deceased when found had a rope in his left hand and a bottle in his

right. There were pistol balls in his head, and buckshot in his right side, above the nipple, etc. There seem to have been no indications about the body that there might have been a combat, but, on the contrary, the appearances were that the slayer had perpetrated a murder. There was no evidence conducing to prove that the deceased had been slain by another person in a sudden heat of passion or provocation, or by misadventure or in self-defense. The State attempted to connect the appellant with the crime by circumstantial evidence. The line of defense seems to have been, not that there were circumstances of mitigation, justification or excuse, but that the appellant was not the slayer; had no connection with the killing.

Such seems to be the character of the case from the evidence, as set out in the bill of exceptions.

It was the province of the judge who presided at the trial and heard the evidence to declare to the jury such principles of law as were deemed, in his judgment, applicable to the case, and we find nothing in the features of the case, as made by the evidence, that should have required the judge to go further in his general charge than he did, and declare the law applicable to the lower grades of homicide.

If, in the opinion of the counsel for the prisoner, there was any feature of the case which made an extension of the charge to the lower degrees of homicide necessary or proper, they had the right to ask it, and except to the opinion of the court if refused. But, as we have seen above, the court gave all of the instructions asked on behalf of the prisoner.

*Fifth*—That the verdict of the jury was against the law and evidence.

The verdict was responsive to the charge in the indictment, and in legal form. It was the province of the jury, not ours, to judge of the weight of the evidence. The counsel for appellant

have not insisted that there was a total want of evidence to sustain any material allegation of the indictment.

*Sixth*—That the court erred in rejecting the testimony of Roger Robertson, witness offered by defendant, whose testimony would have tended to show the *animus* of Mary Jones, (witness for State,) and also would have tended to contradict her in some of her most material statements.

The statement in the bill of exceptions in relation to the introduction of Robertson, and as to what the prisoner offered to prove by him, is as follows:

" Defendant's attorneys offered to introduce Roger Robertson, to prove that in a conversation held by him with Mrs. Benton (defendant's wife) at her front gate, in presence of Mary Jones, after a lawsuit about certain property which the defendant had transferred to his lawyer contrary to her wishes, she said, when told that she could not testify, she would send Mary Jones to testify against him; the defendant offering at the same time to show that his wife was angered against him on account of the property that he had transferred, and had made threats about putting the rope around his neck. This evidence was offered to show the *animus* with which Mary Jones came upon the witness stand, and to impeach her credit by showing that she gave in her evidence under the direction of Mrs. Benton, who was her mother. Court overruled the motion and defendant excepted."

It seems that Mary Jones was the daughter of prisoner's wife by a former husband. How old she was does not appear. In her examination in chief she spoke of the house of the prisoner as her home. Stiegall was there about 3 o'clock the afternoon of the 27th of March. She saw him next morning, after he was found dead. On the night of the 27th, after dark, prisoner took his gun and went out. He had worn a pistol during the day. In about a quarter of an hour after he left the house she heard

the report of a gun and several pistol shots, at a short distance. Shortly after, prisoner returned to the house, set the gun down, went out, and she did not see him again until next morning about 8 o'clock. When she told him that Bob was dead, he said "heuph" (so spelled in the transcript). She told him where the body of Bob was lying. He went with her to the corner of the paling, but did not go up to where the body was. He fed his horses, got his breakfast, saddled his mule and rode off. Said he was going to hunt his colts. She did not see him any more. A more detailed statement of her testimony, on her examination in chief by the State, is deemed unnecessary here.

On cross-examination, by the prisoner's counsel, she went over the same matters, and made additional statements. The only statement made by her that appears to have any relevancy to the sixth assignment is as follows: "My mother never told me to come here and testify in this case." What questions were asked her by the counsel for the prisoner does not appear. Her statements merely are set out in the bill of exceptions.

In determining whether the court erred in excluding what the prisoner's counsel proposed to prove by Robertson, we must look to the bill of exceptions to ascertain what evidence was in fact proposed, and not to the mere statement in the motion for a new trial. It is stated in the motion for a new trial that Robertson's testimony would have tended to show the *animus* of Mary Jones. And also "to contradict her in some of her most material statements."

A witness may be discredited by disproving the facts stated by him by the testimony of other witnesses. 1 Greenleaf Ev., sec. 461. But it does not appear from the bill of exceptions that Robertson was offered to disprove the statement of Mary Jones that her mother had not told her to come there to testify, or to disprove any other fact stated by her.

The bill of exceptions first states what was proposed to be proved by Robertson, and then states the purpose for which this evidence was offered, to show the animus with which Mary Jones came on the stand, and to impeach her credit by showing that she gave in her evidence under the direction of her mother.

The substance of the evidence offered is, that Mrs. Benton had fallen out with her husband, the prisoner, for transferring her property to his attorneys, had threatened to help hang him, and had said in the presence of Mary Jones, her daughter, that she would send her to testify against him. It does not appear that Mary Jones was asked whether she was offended at the prisoner for disposing of her mother's property, or for other cause, but the propositian was to prove by the declarations of the mother that she was prejudiced, and leavé the jury to infer that the daughter shared in the prejudice of the mother, and thereby to discredit her.

If Mrs. Benton had been a competent witness, and put upon the stand to testify on behalf of the State, she could not, on cross examination, have been asked the general question, whether she was prejudiced against the prisoner, but she might perhaps have been asked if she had not fallen out with the prisoner for disposing of her property, and threatened him, and if she had answered in the affirmative, it might have lessened the value of her testimony with the jury; and if she had answered in the negative, she might have been contradicted by other witnesses. *Cornelius* v. *State,* 12 Ark., 800; *Newcomb* v. *State,* 37 Miss., 402. But what the prisoner proposed to prove by Robertson, was too remote, and was brought within none of the established modes of impeaching a witness.

*Seventh*—Because the court erred in deciding that Richard Fletcher was a competent juror, etc.

The bill of exceptions states that during the empanelling of the jury, Richard Fletcher was presented as a juror, and upon his

*voir dire* stated "that he had had a conversation with George Counts, a witness on the part of the prosecution, concerning some material facts in regard to one barrel of the gun of the defendant being recently loaded, etc., and had read the report of the Coroner's jury, and from these two things, he had formed an opinion as to the guilt or innocence of the defendant, and would require evidence to remove that opinion, though he would try to be governed by the evidence, and that he had not now any such opinion in the case as would prevent him from trying the case impartially and without prejudice to the substantial rights of the defendant."

Whereupon the court ruled that he was a qualified juror; the defendant excepted; and challenged him peremptorily. When the jury was finally made up, the defendant had used only fourteen of his peremptory challenges, and had still six unused.

It appears from the record entries that six jurors were accepted from the regular panel, the names of the panel jurors having been placed in a box, and drawn code fashion; four were accepted from the first lot of talesmen brought in by the Sheriff, under order of the court, whose names were likewise put into the box and drawn, and the remaining two were accepted from the second lot of talesmen brought in and drawn.

Whether the juror Fletcher belong to the regular panel, or to the first or second lot of talesmen, does not appear, nor does the bill of exceptions or record entries show whether the prisoner used any peremptory challenge after challenging Fletcher.

By the statute in force before the adoption of the criminal code, it was good cause of challenge to a juror, that he had formed or delivered an opinion on the issue, or any material fact to be tried, but if it appeared that such opinion was founded on rumor, and not such as to bias or prejudice the mind of the juror, he might be sworn.   Gould's Digest, ch. 52, sec. 163.   It

was also provided that all challenges for cause might be tried by the court on the oath of the person challenged, or by triers on other evidence. Ib. sec. 164.

These provisions of the statute were continued in *Stewart* v. *The State* 13 Ark., 737, and *Meyer* v. *The State*, 19 Ark., 159.

In the latter case the court said: "When a juror admits that he has formed or expressed an opinion as to the guilt or innocence of the prisoner, the law regards him as an unfit person to compose part of such impartial jury as the bill of rights secures to the accused, but the disqualification is removed, if he be able to state that such opinion is founded upon rumor in its proper sense, and is not such as to bias or prejudice his mind. This is the substance and effect of the decision in the Stewart case on this point."

Under these decisions, Fletcher was not a qualified juror.

But the statute on which these decisions were made has been suspended by provisions of the criminal code which covers the whole subject of challenges. Gantt's Digest, p. 419-20.

It may be supposed, though the bill of exceptions does not show it, that the prisoner challenged the juror for actual bias. Actual bias is the existence of such a state of mind on the part of the juror, in regard to the case or to either party, as satisfies the court in the exercise of a sound discretion, that he cannot try the case impartially, and without prejudice to the party challenging. Gantt's Digest, sec. 1910.

The challenge was tried by the court, on examination of the juror under oath, and the court found the juror qualified. (Ib. sec. 1917-18.) The court, under the statute, sits in the place of triers which are dispensed with.

The statement of the juror, as it appears in the bill of exceptions, is not consistent. He first states that he had formed an

opinion as to the guilt or innocence of the prisoner from conversing with a witness, and reading the report of the coroner's jury, and that it would require evidence to remove that opinion, though he would try to be governed by the evidence. Had he stopped here the court should have sustained the challenge, but he stated further, in effect, that he had not, at the time he was examined ("now"), any such opinion in the case as would prevent him from trying the case impartially, and without prejudice to the substantial rights of the defendant.

This closing statement would seem to take the juror out of the disqualifying language of the statute.

Construing the statute in reference to the Bill of Rights, which secures to the accused a trial by an impartial jury, we think it would have been safer for the court, upon the whole statement of the juror, to have sustained the challenge, but we cannot undertake to say that the court, sitting in the place of triers, and hearing the whole statement of the juror, who was personally before the court, abused its discretion in overruling the challenge.

But suppose it be conceded that the court did err in overruling the challenge, and that the decision of the court is the subject of exception, notwithstanding the statute to the contrary (Gantt's Digest, sec. 1978,) can the appellant avail himself of such error after having elected to get rid of the juror by challenging him peremptorily?

In *Stewart* v. *The State,* 13 Ark., 742, the prisoner had to exhaust three peremptory challenges to correct errors of the court, and yet, because the record did not show that he had exhausted all his peremptory challenges before the jury was made up, it was held that he could not avail himself of the errors of the court.

In this case the bill of exceptions shows that the prisoner had six peremptory challenges unused when the jury was completed,

and thereby renders the probability that he may have been prejudiced by the error of the court less than it was in Stewart's case. Moreover, the bill of exceptions does not make it appear in this case that the prisoner had any occasion to use, or did, in fact, use any peremptory challenge after he challenged Fletcher off.

The counsel for appellant have insisted with much earnestness that the court should overrule *Stewart* v. *The State,* and have criticised with much ingenuity the logic of Chief Justice Watkins in the case.

The conclusion of the court in that case, on the point in question, is supported by the adjudications cited in the opinion, though there are some cases the other way. The point adjudicated has stood as a rule of criminal practice in this State ever since the case was decided, a period of over twenty-two years, and we are not disposed to review it. We will adhere to the conclusion of the court as the law, leaving the logic of the learned Chief Justice to rest upon his own reasoning as it appears in the opinion.

*Eighth*—Because there never was a certified list of the twenty-four jurors, or a copy of the venire forty-eight hours, or a reasonable time previous to the trial, served on defendant. That in fact he never had, nor did his counsel have, any such list until the morning of his trial, and then after his case was called for trial.

This is a mere statement in a motion for a new trial. The bill of exceptions is silent on the subject.

The prisoner having, when the case was called, announced himself ready for trial, making no objection that he had not been furnished with a list of the jurors, and there being no affirmation showing, in the bill of exceptions, that a list had not been furnished him, the mere silence of the record on the subject was not cause for reversal when the statute requiring the list to be furnished was in force. *Freel* v. *The State,* 21 Ark., 226; *Dawson* v. *The State,* 29 Ark., 116.

Before the adoption of the Criminal Code a venire was issued in every criminal case for a number of jurors equal to the number of peremptory challenges, and twelve in addition thereto. In capital cases thirty-eight were summoned, the accused having twenty peremptory challenges and the State six, and a list was required to be served on the accused at least forty-eight hours before the trial, unless waived. Gould's Digest, secs. 155–56, ch. 52.

These provisions of Gould's Digest were not carried into Gantt's Digest because, no doubt, they were believed to be repealed by the Criminal Code, which provides for a panel of trial jurors for the term, from which, in prosecutions for felonies, juries are to be made up by the addition of talesmen when required. See Gantt's Digest, secs. 1895, 3673–74–77. The Code makes no provision for serving the accused, in any case, with a list of the term trial jurors, for the reason, perhaps, that when the panel jurors are summoned and the process returned the list is subject to inspection by all parties interested, or their counsel. Ib., sec. 3678, 3694.

*Ninth*—Because the visit to and view of the premises by the jury where the killing was alleged to have occurred was made by the jury without the presence of the defendant.

The trial commenced on the 25th October, and on the 27th the following entry was made, when the court was about to adjourn over until the next day: " The court being of opinion that it is necessary that the jury should view the place where the offense is charged to have been committed herein, on motion of the prosecuting attorney, doth order that said jury be conducted in a body, in custody of the proper officer, to the place, and thereupon the court doth appoint T. A. Nathway deputy sheriff, who, in open court, is duly sworn to suffer no person to speak or communicate with the jury on any subject connected with the

trial herein, or to do so himself, except the mere showing of the place to be viewed, which is to be done by Asa Richmond, one of the jurors, who, being familiar with the locality, is appointed for that purpose."

The bill of exceptions states that during the taking of the testimony, and on the third day of the trial, when the order for view of the premises by the jury was made, "Asa Richmond, one of the jurors, having stated that he was familiar with the premises, was appointed by the court to point out the place of the alleged murder, the localities surrounding it, and the situation of the premises of the defendant near which the body of deceased was found. And that neither did the defendant, his attorneys, nor the attorney for the State, accompany the jury, during their view. Neither did the judge, who presided at the trial of the cause, accompany the jury in their view, nor was there any other person (other than Asa Richmond one of the jurors) appointed by the court for the purpose of pointing out to the jury the place or places to be viewed by them."

The statute provides that:

"When, in the opinion of the court, it is necessary that the jury should view the place in which the offense is charged to have been committed, or in which any other material fact occurred, it may order the jury to be conducted in a body, in the custody of proper officers, to the place, which must be shown to them by the judge or a proper person appointed by the court for that purpose.

"Such officers must be sworn to suffer no person to speak or communicate with the jury on any subject connected with the trial, nor do so themselves, except the mere showing of the place to be viewed, and return them into court without unnecessary delay, or at some specified time. Gantt's Dig., secs. 1927, 1928.

In the case of *Patrick Hurley* v. *The State*, on appeal from the Circuit Court of Washington county, there is a record entry

made at the June term of this court, 1871, showing that the judgment was reversed, and the cause remanded for a new trial because the appellant was not permitted to accompany the jury, and be present when they viewed the place, etc., where the murder was charged to have been committed, etc. We are informed by the former Clerk of this court (Mr. Cox) that Justice Searle, who delivered the opinion of the court, withdrew it for some purpose and never returned it, hence it was not recorded, or reported.

Brother Harrison was on the bench at the time, and concurred in the opinion that the judgment of the court below should be reversed because the prisoner was not permitted to be present at the view, which was one of the causes assigned for a new trial.

That, like this, was a case turning upon circumstantial evidence. On looking into the transcript we find that during the trial the following order was made :

"And, now, it being, in the opinion of the court, necessary that the jury should view the place in which the offense, named in the indictment herein, is charged to have been committed, it is ordered by the court that the jury be conducted in a body, in the custody of J. C. Hanna, a sworn bailiff of the jury, herein, who is first duly sworn to suffer no person to speak or communicate with the said jury on any subject connected with the trial, nor do so himself, except the mere showing of the place to be viewed, and return them into court without unnecessary delay ; and the court appoints Albert Brodie to show the said jury the place where said offence is charged to have been committed, so also the late residence of the deceased, as well as of the accused ; who is first duly sworn as the law requires, and, after a special charge of the court to said bailiff, and to said jury in regard to conversing about the trial of said cause, as heretofore, the jury retired to view the place aforesaid in charge of said bailiff."

With the motion for a new trial was filed the affidavit of Albert Brodie, in which he stated that he was appointed and sworn by the court to go with the jury to the place of the alleged murder of John Schiner, and that he did go with the jury, and pointed out to them the place where John Morrow and defendant resided at the time of the alleged murder, and the house also where the said John Schiner resided at the time; and also the cemetery house where Thomas Bevens resided at the time, and the place where the deceased body lay; that the jury, in his presence and company, did visit the places aforesaid, and inspected said houses and the place where the body of deceased was found; and that defendant did not go with them, and was not present with the jury when they visited said places, and viewed the same, but was left with the Sheriff in the court room, when they went out to inspect and examine the places aforesaid.

The record is silent in that case, as in this, as to whether the prisoner asked permission to accompany the jury, or was offered the privilege of doing so.

The record in the case shows that after the order for the view was made, the appellant was again remanded to the custody of the sheriff, and it is probable that he was in prison when the view was made by the jury.

The places, houses, etc., mentioned in the affidavit of Brodie, in Hurley's case, were referred to by witnesses examined in court on trial.

Mr. Wharton says: "The practice which obtains in civil suits, of permitting the jury to visit the scene of the *res gestœ*, is adopted in criminal issues, whenever such a visit appears to the court important for the elucidation of the evidence. The visit, however, should be jealously guarded, so as to exclude interference by third parties, and should be made under sworn officers. Such view may be granted after the judge has summed up the case. But where only a part of the jury visited the

premises, and this after the case was committed to the jury for their final deliberation, this was held ground for a new trial. The visit, also, must be made in the presence of the accused, who is entitled to have all evidence received by the jury taken in his presence." 3 Wharton Cr. L., 7 ed., sec. 3160, p. 151. See also *State* v. *Bertin*, 24 La., An. 46 ; *Eastwood* v. *People*, 3 Parker C. R., 25.

By the bill of rights (sec. 10) the accused must be confronted with the witnesses against him, but the statute authorizing a view does not contemplate or permit the examination of witnesses at the view. The jury is merely to be conducted to, and shown, the place to be viewed, and the view is made by the jurors to enable them the better to understand the testimony given by the witnesses in court. But though no witnesses are examined at the view, yet the jurors, from their observation of the place and its surroundings, may receive a kind of evidence from mute things, which cannot be brought into court to confront the accused, and are in their nature incapable of cross-examination.

But in prosecutions for felony " the defendant must be present during the trial. If he escape from custody after the trial has commenced, or, if on bail, shall absent himself during the trial, the trial may either be stopped, or progress to a verdict, at the discretion of the prosecuting attorney, but judgment shall not be rendered until the presence of the defendant is obtained." Gantt's Digest, sec. 1887.

In *Sneed* v. *State*, 5 Ark., 432, the court, commenting on section 154, chapter 55, Revised Statutes, (then in force,) which provided that no indictment for felony should be tried unless the defendant was personally present during the trial, said that the " statute was declaratory, and an affirmance of the common law, which would not allow any proceeding, affecting life or liberty, to

be had in the absence of the prisoner, and when any step was to be taken in the cause the prisoner was to be present personally, lest in so important a matter he should be prejudiced. This care of the law for his safety was extended through the whole trial, from his arraignment to his final conviction or acquittal." See also *Cole* v. *State*, 10 Ark., 518; *Sweeden* v. *State*, 19 Ark., 209.

The view of the place where the crime is alleged to have been committed, by the jury, is part of the trial, and may be an important step in the trial, and the presence of the prisoner at the view, in a case involving life or liberty, that he may have an opportunity to observe the conduct of the jury, and whatever occurs there might be of the utmost consequence to him.

The judge who presides at the trial, and hears the evidence, must determine whether or not a view be necessary; and if, in the exercise of his discretion, he deems it necessary to order the view to be made, it would be better and safer for him to accompany the jury, if convenient, to see that nothing improper occurs at the view. If not convenient, he may appoint a person to show the jury the place to be viewed, sworn as directed by the statute. If the jurors are familiar with the place, they may be conducted to it by a sworn bailiff in charge of them, and there could be no necessity for the appointment of another person to show them the place.

The accused should be permitted to be present at the view, and, if not on bail, should be in charge of one or more sworn officers, to prevent escape.

There is one paragraph in the general charge of the court to the jury, which we deem it proper to notice, though not objected to by the counsel of appellant when given, nor assigned as a cause for a new trial. It is as follows:

"This case is one turning upon circumstantial evidence, that is to say, upon a chain of circumstances or facts proven, which

point with certainty to the defendant as the person who committed the offense."

The language here employed was unfortunate. It places the judge in the attitude of assuming that a chain of circumstances or facts had been proven in the case, which pointed with certainty to the defendant as the person who committed the offense. Such surely was not the intention of the judge, for in the next paragraph he told the jury that they were the exclusive judges of the facts proved, and that it was their province and duty to decide upon these facts.

The judge was explaining in his charge the difference between circumstantial and direct evidence, and, in the paragraph quoted, doubtless meant to say to the jury that this was a case turning on circumstantial evidence, and that in a case turning on such evidence, there must be proven a chain of circumstances or facts which point with certainty to the defendant as the person who committed the offense, in order to warrant a conviction.

Had the paragraph in question been objected to by the counsel of the appellant, and the attention of the judge directed to the language employed, we are assured, from his long experience on the bench and his known fairness and impartiality as a judge, that he would have changed its phraseology.

Our opinion is that the motion for a new trial should have been sustained, because the appellant was not permitted to be present at the view, and for this error the judgment must be reversed, and the cause remanded for a new trial.