LESLIE *v.* STATE.

Opinion delivered November 13, 1922.

1. CRIMINAL LAW—HARMLESS ERROR.—Accused cannot avail himself of alleged error of the court in overruling a challenge of jurors for cause where the record does not show that he exhausted his challenges.

2. INTOXICATING LIQUORS—TESTIMONY AS TO ALCOHOL RECEIVED BY DRUGGIST.—In a prosecution of a druggist for unlawfully selling intoxicating liquor, testimony of the Federal prohibition agent as to the quantity of alcohol defendant had received and used within a certain period, and that the amount thereof greatly exceeded the quantity used by other druggists similarly situated, was admissible on the question whether unlawful use had been made of the alcohol.

3. CRIMINAL LAW—SALE OF INTOXICATING LIQUORS—PROOF OF CUSTOM.—Where a druggist admitted having sold intoxicating compounds, it was not error to exclude testimony that other druggists in the town sold such liquors.

4. INTOXICATING LIQUORS—RELEVANCY OF EVIDENCE.—In a prosecution of a druggist for unlawfully selling intoxicating liquors, testimony of another druggist that he had a permit to use alcohol in his business during a certain year, but did not do so, was irrelevant and immaterial; but such testimony was not prejudicial where the witness on cross-examination explained that the reason he did not use alcohol during that year was that, instead of making his own tinctures, he bought the drugs already compounded with alcohol in them.

5. CRIMINAL LAW—EXCLUSION OF EVIDENCE.—Where a druggist admitted having sold certain alcoholic compounds, it was not error to refuse to permit him to show that alcohol was a necessary preservative in such compounds where he did not offer to

prove that such compounds did not contain more alcohol than was necessary to preserve them as medicine.

6. CRIMINAL LAW—EXCLUSION OF EVIDENCE.—In a prosecution of a druggist for the unlawful sale of intoxicating liquor, in which a witness testified that he bought a bottle of patent medicine containing alcohol from defendant, refusal to permit the witness to state for what purpose he bought it was harmless when he was subsequently permitted to state that he took it for constipation and not for a beverage.

7. CRIMINAL LAW—EXCLUSION OF EVIDENCE.—In a prosecution of a druggist for unlawfully selling intoxicating liquors, where the State proved that intoxicated persons were arrested having bottles containing a medicine called "Lyko" on their persons purchased from defendant, and the State was permitted to exhibit to the jury a bottle of such medicine for the purpose of showing the label and the liquor, it was not error to exclude testimony that the particular bottle so exhibited came from another drugstore.

8. CRIMINAL LAW—EVIDENCE.—It was competent for a physician to testify that he knew the ordinary per cent. of alcohol in Jamaica Ginger, that it contained 94 per cent. of alcohol, and that it could be used as a beverage.

9. INTOXICATING LIQUORS—INTENT OF PURCHASER.—Under Crawford & Moses' Dig., §§ 6160, 6181, it is a violation of law to sell or to be interested in the sale of alcoholic, vinous, malt, spirituous or fermented liquors, or any compound or preparation of these commonly called tonics, bitters, or medicated liquors, regardless of whether or not they are to be used or intended by the seller or purchaser to be used as beverages.

10. INTOXICATING LIQUORS—EXCEPTION IN FAVOR OF DRUGGISTS.—Under Crawford & Moses' Dig., § 6181, making it lawful "for any registered pharmacist or physician to have shipped and delivered to him such necessary quantities of alcohol as may be required in his business or practice," druggists are prohibited from making or selling or giving away of bitters or medicated liquors where alcohol or any one of the other liquors mentioned is the dominating ingredient, or where the alcohol is used not merely for preserving the tincture or compound as a medicine, but in such a way that it is fit to be used as a beverage; but if drugs containing only the necessary quantity of alcohol to compound and preserve them as medicines are sold, then such sale is not unlawful because some one of abnormal appetite, depraved habits or perverted taste buys such medicines for use as a beverage.

Appeal from Little River Circuit Court; *James S. Steel,* Judge; affirmed.

*A. D. DuLaney* and *June R. Morrell,* for appellant.

, *J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

Wood, J. This is an appeal from a judgment of conviction on an indictment which charged that appellant "did unlawfully and feloniously sell and give away, and was unlawfully and feloniously interested in the selling and giving away of ardent, vinous, malt, fermented, spirituous, intoxicating, alcoholic and medicated liquors."

The appellant contends that the court erred in failing to excuse two of the regular panel of the petit jury for cause. Appellant excused these jurors by peremptory challenge, and the record does not show that he exhausted his challenges. Therefore, it does not appear that the appellant was compelled to accept these jurors and that an objectionable juror was thrust upon him. In this state of the record the appellant cannot avail himself of the alleged error of the court in overruling the challenge of the jurors for cause. *Benton v. State,* 30 Ark. 328; *Wright v. State,* 35 Ark. 639; *Holt v. State,* 91 Ark. 576; *Lewis v. State, ante,* p. 205.

2. W. A. Garner testified that he was a Federal prohibition agent having his office at Little Rock, Arkansas. It was his duty to make investigation of the amount of alcoholic liquors handled by druggists as well as individuals throughout the State of Arkansas. Over the objection of appellant the witness was permitted to testify that from January 5 to August 10, 1921, a period that was covered by the indictment, the appellant had received about fifty-two gallons of alcohol. In explanation of the amount of alcohol received by appellant during this period, he stated that his permit allowed him to receive this amount, and he thought he was within his rights in withdrawing it. Witness further testified, over the objection of appellant, that the amount of alcohol during this period which was mentioned as withdrawn by the appellant under his permit "is considerably in excess of the quantity used by a majority—say 85 per cent. of the

drugstores of this State of the same kind and character of towns the size of this." The witness, over the objection of the appellant, was permitted to testify with reference to the regulations of the United States Government concerning the use by druggists of alcohol, showing that druggists were required to keep a daily record showing how the alcohol purchased was used, and to render reports on a certain form on or before the fifth of each month of all alcohol received and how disposed of by them during the preceding month. The witness stated that he was from time to time reporting the failure of druggists to comply with that regulation, and as a result of witness' report to the department the regulation of June 15, 1922, to which the witness referred, had been written by the prohibition director. There was no record in the Model Drugstore, of which the appellant was the proprietor, showing the disposition of the alcohol, except appellant had the reports for probably two or three months, which stated as follows: "I used four gallons or ten gallons during this period." Appellant did not state for what purpose it was used. At the conclusion of the witness' testimony, the appellant moved the court to instruct the jury not to consider any of the statement with reference to what the Federal regulations required.

The court overruled the motion to exclude, with the following statement to the jury: "The only purpose of this is a circumstance showing whether or not the alcohol was used legitimately or improperly; that is the only purpose, and that is just simply a circumstance to guide you in the matter." There was no error in the rulings of the court. The appellant himself admitted in his testimony that the quantity of alcohol which he had received under the regulations of the United States Government was the same as that testified to by Garner. Therefore, appellant was not prejudiced by the testimony of Garner as to the quantity of alcohol appellant had handled during a certain period. Moreover, the indictment against the appellant included a charge of unlawfully and feloniously

selling and giving away alcoholic liquors. It was therefore competent and relevant for the State to prove what quantities of alcohol had been received by appellant and what disposition he had made of the same. *Hanlon* v. *State,* 51 Ark. 186; *Gage* v. *State,* 125 Ark. 256.

The duties of Garner as Federal prohibition agent required him to visit the drugstores throughout the State and make report of the amount of alcohol that was being used by druggists under the government regulation. He therefore had first-hand knowledge of the towns of the size in which appellant was doing business and what quantity of alcohol usually was handled under the government regulations by druggists engaged in the same kind of business and of equal size of that appellant was engaged in. The testimony of Garner therefore to the effect that the appellant used a quantity of alcohol greatly in excess of the quantity used by other druggists similarly situated was competent as a circumstance, in connection with the other circumstances, to be considered by the jury in determining whether or not the appellant was making lawful or unlawful use of the alcohol received by him. See Joyce on Intoxicating Liquors, §§ 669-671.

One J. R. Pierce, the sheriff of Little River County, was permitted, over the objection of appellant, to testify that he had arrested people who were drunk and who had in their possession bottles of Lyko, Beef, Iron and Wine, Jamaica ginger, etc. He took these bottles of medicated liquors off the individuals and destroyed them. Three or four times he got a lot of them back of appellant's store. He had discussed the matter of the sale of these liquors with the appellant two or three times. Appellant did not deny selling them, but he didn't admit that they were medicated liquors.

The appellant offered to show that other stores in the town sold these liquors, but the court refused to allow such testimony. There was no error in this ruling of the court. The appellant himself testified that he sold Lyko, Beef, Iron and Wine, but he stated that these tinctures

were commonly sold in drugstores; that he sold them as medicines. He stated that Beef, Iron and Wine contained 19 per cent. of alcohol, and tincture of Jamaica ginger contained about 95 per cent. He had not at any time handled or sold any drug that was contraband under government regulations. There was other testimony introduced on behalf of the appellant tending to show that Lyko, Beef, Iron and Wine were tonics, but were not intoxicating. Since the appellant admitted, and the undisputed testimony shows, that the appellant sold Beef, Iron and Wine, and Lyko, it was wholly immaterial whether other persons in the same town also sold the same liquors or not. Appellant did not deny the sale, but only denied that they were medicated liquors within the inhibition of the statute. The testimony tending to prove that Lyko, Beef, Iron and Wine, and Jamaica ginger were intoxicating, that persons were found in an intoxicated condition with bottles containing these liquors upon their persons, was relevant to the issue as to whether or not the appellant sold the medicated liquors prohibited by law, as charged in the indictment.

R. D. Huskins, a witness, over the objection of appellant, testified that he was a druggist at DeQueen and had a permit to use alcohol in his drug business in the year 1921, but he didn't use any alcohol in his business. The testimony thus elicited on direct examination by the State was wholly irrelevant and immaterial, and, if the examination had ended there, might have been prejudicial, as the jury might have inferred that if it was not necessary for another druggist of the same character of appellant to use alcohol in his business, neither was it necessary for the appellant to do so. But, after the examination for the State had closed, the appellant on cross-examination caused the witness to testify that he, witness, did not make his own tinctures in 1921, and that in compounding tinctures it was necessary to use alcohol as a preservative. The appellant here made the witness his own and proved by him that alcohol was used in com-

pounding a large number of tinctures; that the reason the witness did not use alcohol during the year 1921 was because, instead of making his own tinctures, he bought the drugs already compounded with alcohol in them. The irrelevant testimony of this witness elicited by the State was thus nullified and its prejudicial effect removed by the explanation of the witness (brought out by appellant) to the effect that, if he had made his own drugs, it would have been necessary to use alcohol in compounding them.

The State again examined the witness as her own, and, over the objection of appellant, proved by him that he did compound his own tinctures in the year 1919-1920, and that he used that year four and seven-eighths gallons of alcohol. The witness thought it was a little cheaper for a druggist to compound his own tinctures than to purchase them from pharmaceutical houses. The witness stated, over the objection of appellant, that the percentage of alcohol in Jamaica ginger was pretty large. The appellant was not permitted to prove by this witness that alcohol was a necessary preservative in Lyko, Beef, Iron and Wine, Prickly Ash Bitters, Sarsaparilla, and patent medicines of that character. The court ruled that it was wholly immaterial whether alcohol was necessary to preserve them or not; that the only issue was as to whether they were such medicated liquors as were used as beverages. The appellant did not offer to prove and did not prove that the Lyko, etc., contained only such a percentage of alcohol as was necessary to compound and preserve them as medicines, and no more.

Bob Rowe, a witness for the State, testified that he bought a bottle of Lyko from the appellant last fall (1921). He did not drink it for intoxication. The appellant, on cross-examination, asked the witness "for what purpose he bought it?" The court sustained the objection to the question, stating "What purpose he used it for is the rule of law." The appellant was further permitted to show by the witness that he took the Lyko for constipation;

that he bought it and used it for that purpose, and did not use it as a beverage.

The State was permitted, over the objection of appellant, to show that on certain occasions, within the time covered by the indictment, a man by the name of McFadden was arrested on the street for being drunk, and that two bottles of Lyko were found on his person. McFadden testified that he purchased the Lyko from the appellant, and had not purchased it from any other place than the Model Drugstore. The State was also permitted to show that on another occasion the officers arrested one Charlie Jordan, in a drunken condition, in an alley back of the appellant's store, and he had upon his person at the time a bottle of Lyko, and also arrested another party who was drunk and had an empty bottle, which had contained Lyko, on his person. A witness for the State was permitted to exhibit to the jury a bottle of Lyko, the court announcing at the time that it was done for the purpose of showing the label and the liquid itself. The appellant offered to prove that this particular bottle of Lyko came from Phillips' drugstore. The court ruled that it was immaterial where the bottle came from.

J. W. Ringgold, a witness for the State, was permitted to testify, over the objection of appellant, that he had been a practicing physician for 29 years; that he knew the ordinary per cent. of alcohol in Jamaica ginger; that it contained 94 per cent. of alcohol, and that it could be used as a beverage.

There was no error in the rulings of the court in the admission of any of the above testimony. As we have seen, it was competent to prove by one who did a drug business about equal to that of the appellant that in the compounding of tinctures and the preservation of drugs it was unnecessary to use the large quantities of alcohol shown to be used by the appellant between January 5 and August 10, 1921. The testimony of R. D. Huskins tended to prove that fact, and it was relevant. As we have also shown, appellant did not deny that he sold Lyko. His

sole defense was that it was not an alcoholic or medicated liquor within the meaning of the statute, and that it was sold by him as a medicine. Testimony therefore tending to prove that Lyko, Jamaica ginger, and the other liquors sold by the appellant contained alcohol, that they were intoxicating, were sold by appellant, and used by the purchasers thereof as beverages, was relevant to the charge in the indictment.

3.   The court instructed the jury, over the objection of the appellant, in effect that if they believed beyond a reasonable doubt that the appellant sold, or was interested in the sale of, alcoholic or medicated liquors as alleged in the indictment, they should convict him; that if the sale was made by the Model Drugstore, in which the appellant was interested, this would be sufficient. The court further instructed the jury that, under the law, any person who sells medicine containing alcoholic properties does so at his peril, and that if the jury believed beyond a reasonable doubt that the appellant sold medicated and intoxicating liquors that were used or intended to be used for beverage purposes, they should convict him. The court further told the jury that if the appellant sold medicated liquors it was no defense that same were sold in good faith as medicine; that if medicated and alcoholic liquors were sold and same were used as intoxicating beverages, the appellant would be guilty.

The appellant requested the court to instruct the jury in substance that it was not unlawful to use alcohol for medicinal purposes or to sell the same when it was compounded with medicine for medical uses and purposes; and further, that it was lawful to use alcohol as a necessary preservative of certain drugs, tinctures, bitters and medicated liquors, and that, although the jury might find that the medicated liquors, tinctures and bitters sold by the appellant contained alcohol as a preservative thereof, the burden was on the State to prove beyond a reasonable doubt that the same was intoxicating and sold as a beverage.

Sec. 2 of act 30, approved February 6, 1915, sec. 6160, C. & M. Digest, provides as follows: "It shall be unlawful for any person, firm or corporation to manufacture, sell or give away, or be interested directly or indirectly in the manufacture, sale or giving away of any alcoholic, vinous, malt, spirituous, or fermented liquor, or any compound or preparation thereof, commonly called tonics, bitters, or medicated liquors, within the State of Arkansas."

Sec. 17 of act 87 of the Acts of 1919, sec. 6181, C. & M. Digest, provides in part as follows: "Nothing in this act shall make it unlawful * * * for any registered pharmacist or physician to have shipped and delivered to him such necessary quantities of alcohol as may be required in his business or practice." These statutes are in pari materia and must be construed together to effectuate the purpose of the Legislature in enacting them.

Before the above laws were passed the inhibition was against selling liquors of the character mentioned "which are used and drunk as a beverage." See sec. 5093, Kirby's Digest. The present law contains no such exception. Therefore, it is a violation of the law now for any one to sell or be interested in the sale of the liquors mentioned in sec. 6160, C. & M. Digest, supra, whether they are used, or intended by the seller or purchaser to be used, for beverage purposes or not. The statute is leveled against the selling or being interested in the sale of alcoholic, vinous, malt, spirituous, or fermented liquors, or any compound or preparation of these, commonly called tonics, bitters, or medicated liquors. While the lawmakers did not intend to prohibit the sale of drugs which contain only such a percentage of alcohol as is necessary to compound and preserve them as medicines, yet they did intend to prohibit the sale of the liquors named in the statute, or a compound or preparation thereof, under the guise of medicine, and as a subterfuge to cover the sale of the prohibited liquors and medicated liquors mentioned therein. The exception con-

tained in the statute shows that it was the intention of the lawmakers to allow pharmacists such necessary quantities of alcohol as may be required in their business, that is, in the art and science of compounding and preparing medicine. Druggists and pharmacists are prohibited from making or selling, or giving away, or being interested in the sale or giving away of bitters, or medicated liquors, where alcohol, or any one of the other liquors mentioned, is the dominating ingredient, or where the alcohol is used not merely for preserving the tincture or compound as medicine, but in such a way that it is fit to be used as a beverage. If drugs, containing only the necessary quantity of alcohol to compound and preserve them as medicines, are sold, then such sale is not unlawful because some one of abnormal appetite, depraved habits, or perverted taste, buys such medicine for use as a beverage.

As was said in *Gostorf* v. *State,* 39 Ark. 458, "tonics, bitters, and medicated liquors are within the operation of the prohibitory clause of the act, irrespective of the fact that they may be useful as medicine and not so desirable as beverages as if the medicinal properties were omitted."

It will be observed that the instructions of the court were more favorable to the appellant than he was entitled to, because the court required the jury to find beyond a reasonable doubt that the appellant did sell medicated and alcoholic liquors, or medicated and intoxicating liquors that were used or intended to be used for beverage purposes. As we have seen, it is a violation of the law to sell alcohol and the other liquors named, or any compound or preparation thereof, commonly called tonics, bitters, or medicated liquors, whether they are used or intended to be used for beverage purposes or not. If such liquors are manufactured, sold, or given away, containing an alcoholic or intoxicating ingredient fit to be used as a beverage, then such manufacture, sale, or giving away is within the inhibition of the statute,

whether such liquors are ever actually used, or intended to be used, as a beverage or not.

In one of its instructions the court told the jury "that the burden is on the State to prove to your satisfaction, beyond a reasonable doubt, that the Lyko, Beef, Iron and Wine or Jamaica ginger, which were sold, was an alcoholic, vinous, malt, spirituous, fermented, medicated, or intoxicating liquor." There was testimony tending to prove that the appellant sold Jamaica ginger which contained ninety-four per cent. of alcohol and that he sold Lyko and other liquors which contained from twenty to fifty per cent. of alcohol, and that these liquors had an intoxicating effect upon those who drank them. The instruction correctly declared the law applicable to the facts. See *Stelle* v. *State,* 77 Ark. 441; *Dollar* v. *State,* 153 Ark. 14.

We find it unnecessary to comment upon the rulings of the court in the granting and refusing of each of the separate prayers for instructions. The instructions as a whole contained no error of which the appellant can complain. The record presents no reversible error in the rulings of the trial court. The judgment is therefore affirmed.

HUMPHREYS, J., (concurring). I concur in the affirmance of this case, and in the opinion, save that portion thereof which seems to intimate that the exception in favor of druggists and pharmacists is broad enough to allow them to sell or give away tonics, bitters, or other medicated liquors containing alcohol, to persons who, by reason of abnormal appetites, perverted tastes, or depraved habits, buy and use them as a beverage. One of the purposes of the law was to save people from their weaknesses and to shut every avenue through which they might obtain alcohol in any form with which to satisfy their appetites and tastes. The exception in favor of druggists was to allow them to use alcohol in their medicinal tinctures and compounds for preservative purposes only, and to restrict the giving or selling of

such tinctures and compounds to use as medicines. My construction of the two statutes referred to, when read together, is that they prohibit a druggist or pharmacist from selling or giving away any tincture or compound containing any alcohol, if used by the recipient as a beverage.