HONAKER *v*. STATE.

Opinion delivered October 27, 1924.

1.  INTOXICATING LIQUORS—UNLAWFUL SALE—EVIDENCE.—In a prosecution for the sale of intoxicating liquor, proof of finding a number of empty bottles of vanilla extract a quarter of a mile from defendant's home at a place where young men were accustomed to assemble for the purpose of gambling, was admissible to show that the extract was used as a beverage, it being also shown that defendant was the exclusive agent selling that brand in the county.

2.  INTOXICATING LIQUORS—SALE OF EXTRACT OF VANILLA.—Sale of vanilla extract which could be and was used as an intoxicating beverage was unlawful, though it was not manufactured for that purpose nor sold by defendant to be so used.

3.  INTOXICATING LIQUOR—SALE OF VANILLA EXTRACT—INSTRUCTION.—In a prosecution for sale of vanilla extract as an intoxicating beverage, the court erred in refusing to instruct that, if the extract contained only the necessary quantity of alcohol to compound and preserve it for domestic use, the sale is not unlawful because some one of abnormal taste or depraved habits buys it for use as a beverage.

Appeal from Johnson Circuit Court; *J. T. Bullock,* Judge; reversed.

*G. O. Patterson,* for appellant.

*J. S. Utley,* Attorney General, and *Darden Moose,* Assistant, for appellee.

SMITH, J. Appellant was convicted on the testimony of Joe Logan on the charge of selling intoxicating liquors. Logan testified that he had been drinking moonshine whiskey, when he bought two bottles of vanilla extract from appellant, which he also drank, and that the extract made him drunk.

Appellant was the county agent for the Watkins Medical Company, and sold various preparations put up by that company. His stock of merchandise was transported over the county in a wagon, from which he made his sales.

A witness testified that he found a number of empty bottles of vanilla extract, having the label of the Watkins Medical Company on them, in the woods about a quarter of a mile from appellant's home, at a place where

a number of young men were accustomed to assemble for the purpose of gambling. The admission of this testimony was objected to as incompetent, but we think it was competent to show that the extract was used as a beverage, and was drunk as such, it being also shown that appellant was the exclusive agent selling the Watkins preparations in that county.

Appellant requested an instruction numbered 1, which would have told the jury, in effect, that, if Logan represented to appellant, at the time the extract was purchased, that he was buying it for his mother, who intended to use it in cooking, the defendant should be acquitted.

Appellant also asked, and the court refused to give, an instruction which would have told the jury to acquit the defendant unless the extract was sold for use as a beverage.

Both of these instructions were refused, and properly so.

Our present statute on the subject of the sale of intoxicants was thoroughly considered and recently construed in the case of *Leslie* v. *State,* 155 Ark. 526, and it would serve no useful purpose to repeat here what was there said. See also *Sanders* v. *State,* 164 Ark. 491.

The witness Logan admitted that he told appellant he was buying the extract to be used by his mother in cooking; but, under the law as announced in the cases cited, this was immaterial, if the article sold could be and was used as an intoxicating beverage, although it was not manufactured for that purpose and was not sold by appellant to be so used.

Appellant requested, but the court refused to give, an instruction numbered 3, reading as follows: "If an extract containing only the necessary quantity of alcohol to compound and preserve it for domestic use is sold, then such sale is not unlawful because some one of abnormal taste, depraved habits or perverted habits buys such extract for use as a beverage."

This instruction, or one to the same effect, should have been given as requested by appellant. The instruc-

tion is copied substantially from the language appearing in the opinion in the Leslie case, *supra,* and by the language there used we meant to say that it was not unlawful to sell a medicine which contained no more alcohol than was necessary to compound and preserve it, and that the lawful act of compounding medicine with no more alcohol than was necessary to compound and preserve it was not rendered unlawful because some pervert drank the medicine.

A chemist is permitted to use such quantity of alcohol as is reasonably necessary for this purpose, without violating the law; if he uses a larger quantity, he does so at his peril, and in violation of the law. It is therefore a question of fact in such cases whether a greater quantity of alcohol was used than was reasonably necessary for the lawful purpose of compounding and preserving.

Appellant testified that the extract which he sold the witness Logan contained 33 1/3 per cent. of alcohol, but that the company had later reduced the quantity of alcohol to 24 per cent., but the extracts had not proved satisfactory to his customers, who were almost exclusively housewives, since the reduction in the percentage of alcohol.

A druggist who had followed that business for fourteen years testified that it was customary and necessary in compounding extracts to use from 30 to 60 per cent. of alcohol.

The jury might therefore have found that the extract contained no more alcohol than was reasonably necessary to compound and preserve it, and may have believed that it was the whiskey which made Logan drunk, and yet have convicted appellant because the extract did contain alcohol and was drunk by the witness.

The court, in instructions given, told the jury that it was unlawful to sell a compound containing intoxicants which might be used for beverage purposes, whether the seller intended that they should be so used or not. This, generally speaking, is the law; but this statement

of the law is subject to the exception in instruction numbered 3 requested by appellant. ·

Extracts are commonly regarded as foods, rather than as drugs, but § 5 of the Pure Food and Drug Act, which became § 4822 C. & M. Digest, defines the term "drug" as "all medicines and preparations recognized in the United States Pharmacopœia or National Formulary for internal or external use, * * *" and extract of vanilla or tincture of vanilla is found in the 8th revision of the United States Pharmacopœia, page 488, and also appears in all the prior revisions of the Pharmacopœia, and is also found in the National Formulary.

We conclude therefore that the same rule is applicable alike to extracts or tinctures as is applicable to other drugs, that is, so much alcohol, and no more, may be used as is reasonably necessary to compound and preserve, and, if this quantity, and no more, is used for that purpose, the law is not violated, although some pervert drinks it.

For the error indicated the judgment is reversed, and the cause is remanded for a new trial.

HUMPHREYS, J., dissents.