By the Court,
Leonard, J.:
•Defendants were jointly indicted for the crime of burglary in entering the dwelling-house of J. H. Alderson, in the town of Eureka, in the night-time of the third day of March, 1877, with the intent then and there to steal the goods and chattels of said Alderson. Cowell and Winnie were convicted and sentenced. Cowell appeals from the *342 judgment and tbe order overruling bis motion for a new trial. A portion only of tbe testimony is contained in tbe transcript. On tbe trial defendant Winnie testified on behalf of tbe state as follows:
“Tbe defendants, Cowell, Graham and myself, broke into tbe dwelling-house of Alderson and took away tbe goods of Alderson, on or about the time mentioned in tbe indictment. Before that time Graham, Cowell and myself bad a number of conversations in reference to tbe robbery of Alderson’s bouse. On one evening, in one of these conversations, a few days before the commission of the burglary alleged in the indictment, I, Cowell and Graham agreed to commit a robbery on the person of J. II. Alderson, on a public street in Eureka, as Alderson ivas returning home. We did not rob him, because I told them he had nothing to be robbed of that night. Cowell and Graham were watching Alderson on the street for that purpose.”
Counsel for defendants objected to this testimony on tbe ground that it was immaterial and irrelevant to tbe issue pending, and prejudicial to tbe defendants, and calculated to prejudice tbe jury against defendant Cowell; and after such testimony was given counsel for defendant Cowell moved to strike it out.
Tbe court overruled appellant’s objection and denied bis motion to strike out. Exceptions were taken to tbe rulings of tbe court. J. H. Alderson and James Sias testified to facts tending to corroborate tbe testimony of defendant Winnie in regard to tbe commission of tbe alleged burglary by defendants; and a letter was introduced in evidence by defendant Cowell, tending to show bis connection with the burglary mentioned in tbe indictment. Tbe record shows that appellant objected to all tbe testimony of Winnie, quoted above, and that be moved to strike it all out. Tbe portion not italicised is certainly not open to tbe objections made. Surely, that part is material and relevant to the issue. There is more doubt as to tbe italicised portion; but we are of tbe opinion, under all tbe circumstances of the case, that the court did not err in its rulings. It was tbe province of tbe jury to judge of tbe weight and value *343 of Winnie’s testimony, and of the court to decide as to its materiality and relevancy. The jury found the portion true which directly appertained to the crime charged, and there is nothing in the record which in any manner contradicts the italicised parts. The court admitted the testimony against the objection of counsel for appellant, and refused to strike it out, as stated above. The action of the court in this regard is the only error urged or claimed by appellant. We shall, therefore, confine ourselves to this assignment.
It should be borne in mind that in order to constitute the crime of burglary, the defendant must not only enter some one of the structures mentioned in the statute, at the time and in the manner therein stated, but he must enter with intent to commit some one of the crimes specified. It is just as essential to prove the intent as it is the entry. If both are not proven to the satisfaction of the jury beyond a reasonable doubt there can be no conviction. The quo animo constitutes an indispensable part of this crime, just as the scienter does in forgery and counterfeiting; and the rule of evidence governing proof of each is the same. (1 Greenl. Ev., sec. 53.)
In this case it was charged in the indictment that the defendants entered with intent to steal, take and carry away the goods and chattels of J. H. Alderson. It was incumbent upon the state, then, to prove the intent alleged. It is true, if defendants entered Alderson’s house, as stated in the indictment, and stole his property, the jury were at liberty to infer from those two facts that they entered with the intent to do just what they did do; and probably it was unnecessary, in fact, for the state to show the intent by other proof. But although this was true, if the other facts testified to by Winnie tended to show the intent of defendants at the time of entry, then the most that can be said against their admission is that they were cumulative of what had already been proven by the same witness. This fact would not make them incompetent or irrelevant; nor would it render them immaterial, except in the sense that the intent was sufficiently established without them. It would be strange *344 indeed, if a second witness could not testify upon a fact already testified to by a former witness, or if tlie same witness could not state facts tending to sustain Lis former statements, without opening the door to an objection on the ground of immateriality. “It should be remembered that under the head of relevancy the question is not whether the evidence offered be the most convincing, but whether it tends at all to illustrate the question. To make testimony relevant, it is not necessary that it should be essential. Though cumulative and super-rogatory, it may be received, ” (1 Phil. Ev. 622; Cowen & Hill’s and Edward’s Notes.) If, then, the testimony of Winnie in relation to the agreement to rob Alderson tended to prove an essential element of the crime with which defendants were charged, to wit: their intention to steal the goods and chattels of Alderson, the court did not err in its rulings. We think it did tend to prove such intent.
It is evident from the testimony of Winnie that prior to the burglary, defendants had numerous conferences in relation to entering Alderson’s house for the purpose (using the language of the witness) of “robbing” it; that on a certain evening prior to the burglary, when they were conspiring together concerning the contemplated burglary, they concluded and agreed to rob Alderson on the street, while going to his home in the evening. They did not commit the robbery, for the reason that they ascertained through Winnie that Alderson had no money on his person that night. In all their conversations and conferences they had but one object in view, and that was, by force or stealth to get the property of Alderson. The means proposed to be used in carrying out their scheme were different, but the end to be attained was always the same. Their only object in meeting was to devise ways and means vdiereby they could accomplish their object. On the same evening and at the same meeting, they talked about breaking into Alderson’s house and robbing him on the street. It is apparent that robbery seemed the more feasible plan, which they adopted. After failing in that, they then pursued their original idea and consummated their object by burglary. Night after night they *345 met and consulted as to the manner of accomplishing their common design, and each subsequent meeting must be regarded as a continuation of former ones. The ineffectual attempt to rob Alderson on the street was apparently a link in the chain of acts that commenced at their first meeting, and ended with the burglary. Suppose, after failing to accomplish their purpose by robbery, they had gone directly from the street to Alderson’s house and there effected an entry, but, after entering were interrupted by some means so that they committed no theft; or suppose all their conversations had been on the night of the burglary; that they first talked of “robbing the house,” but finally concluded to rob Alderson on the street; that they failed in the latter and proceeded from the street to the house, and, after entering, by reason of an interruption stole nothing. In either case, if they had made the entry with the intent to steal, they would have been guilty of burglary, and yet there would have been no proof of the intent unless that can be shown in such case by just such facts as are objected to by appellant. It would seem that in the case first supposed, the fact of an ineffectual effort to rob on the street, together with the further fact that they followed their man from the street to his house, would at least tend to show for what purpose they entered the house. It might not be sufficient to convict in the minds of the jury, but it would certainly be a matter to be placed before them for their consideration; and in the second case supposed we feel confident that proof of their conversations, showing the object they had in view and the intermediate attempt at.robbery, together with the culminating act of entry, would all be admissible for the purpose of showing intent. On principle, we are unable to find any distinction between the cases mentioned and the one in hand. If the defendants had agreed at one of their conferences that they would have Alderson’s money in some manner, and if they could not get it by robbery they would by burglary, or the reverse, it is certain that such agreement would have been admissible to prove intent. It was equally proper to allow facts to be proven which tended to show such a design.
*346 Mr. Roscoe says: “Of course all evidence directly bearing on any offense, which can be, and is, under the indictment before the jury, made the subject of inquiry, is admissible. So, also, and almost equally, as a matter of course, evidence may be given not only of the actual guilty act itself, but of other acts so closely connected therewith as to form a part of one chain of facts which could xxot be excluded without rendering the evidexxce unintelligible. Thus, in a case cited by Lord Ellenborough, in R. v. Whiley (2 Lea., 985, S. S., 1 New Rep., 92), where a man coxnmitted thx-ee bux’glaries in one night, and stole a shirt in one place and left it in another, and they were all so connected that the court heard the history of all three burglaries; and Lord Ellenborough remarked that “if crimes do so intermix, the court must go through the detail.” (Roscoe’s Crinx. Ev., 86 et seq.) Ixx Bex v. Ellis (6 B. axxd 0., 145), the court say: “ Generally speaking, it is not competent for a px'osecutor to prove a maxx guilty by proving him guilty of another unconxxected feloxy; but where several felonies are connected together, and form part of oxxe entire transaction, the one is evidence to show the character of the other.” (Pierce v. Hoffman, 24 Vt. 527; Bottomley v. United States, 1 Story, 142-4; 1 Greenl. Ev., sec. 53, note 3; Baalam, a Slave, v. State, 17 Ala., N. S., 453; Dunn v. State, 2 Ark. 243; Commonwealth v. Call, 21 Pick. 522; Dunn’s case, Moody’s Crown cases, 150; Rex v. Wylie, 4 Boss, and Pull., 92; Rex v. Long, 6 Car. and P., 383; Rex v. Mogg, 4 Car. and P., 555; Rex v. Egerton, 1 Russ, and Ryan, 375; Tharp v. State, 15 Ala., N. S., 757.)
The judgment and order of the court below are affirmed.