THE STATE OF KANSAS v. JAMES M. ADAMS.

1. VERIFYING INFORMATION; *Jurat; Name of Officer Omitted; Affixing Signature, After Plea.* Where the clerk fails to attach his signature and seal to the jurat of an affidavit verifying an information, and the defendant pleads not guilty to the information while so defective, it is not error for the court to permit the clerk before a jury is called to perfect the jurat by attaching his signature and seal; and this, notwithstanding the only evidence that the county attorney in fact swore to the affidavit subscribed by him before the filing of the information is the oral statement of the clerk, not under oath, that such was the fact.

2. CHANGE OF VENUE, *In Criminal Action; Bias and Prejudice of People.* A change of venue in a criminal case, on account of the bias or prejudice of the inhabitants of the county against the defendant, can only be had when the existence of such bias or prejudice is shown to the satisfaction of the court. And where a large number of affidavits and counter affidavits are offered, in which opinions are expressed in general language *pro* and *con* upon the question, the means of knowing the general sentiment of the community, as disclosed by the several affiants, is an important factor in determining the value of their testimony. And *held,* that the affidavits in this case do not disclose such bias or prejudice as entitled the defendant to a change of venue.

3. CONTINUANCE; *Affidavit of Defendant; Testimony of Absent Witness.* The cases of *The State v. Thompson,* 5 Kas. 159, and *The State v. Dickson,* 6 Kas. 209, are still authority on questions of continuance in criminal cases, for, though the rule of the supreme court upon which they were based has been repealed, in lieu thereof there is an enactment of the legislature of the same import.

4. EVIDENCE; *Relevancy and Competency; Distinct Offenses.* While evidence of the commission of one crime is incompetent on the trial of a party for another and distinct offense, merely for the purpose of inducing the jury to believe that defendant is guilty of the latter, because he committed the former, yet, evidence which tends directly to show the defendant guilty of the crime charged, is not rendered incompetent because it also tends to prove him guilty of another and entirely different offense. And generally, where there is evidence of a conspiracy to commit a crime, and of its subsequent commission, the state may, and in support and corroboration thereof, show any act or conduct of the alleged conspirators intermediate the conspiracy and the crime, which apparently recognizes the existence of the conspiracy, reasonably indicates preparation to commit the crime, or preserve its fruits; and this, notwithstanding such special act of preparation was not the one discussed or agreed upon by the conspirators, and is rendered actually

The State v. Adams.

fruitless and unavailing by the unexpected interference of third parties, and also involves the commission of another and distinct crime.

5. TRIAL; PRESENCE OF DEFENDANT; *Absence of Jury to View Premises.* During the trial the jury were sent under charge of an officer to view the place where the crime was committed. Neither the judge, the clerk, the attorneys, nor the defendant, accompanied them. The record does not show that defendant applied for leave to accompany them, or made any objection to their going, or presented this action of the court as ground for a new trial. *Held,* No ground for reversing the judgment of conviction, notwithstanding section 10 of the bill of rights provides that, "in all prosecutions the accused shall be allowed to appear and defend in person or by counsel, to meet the witnesses face to face," and section 207 of the code of criminal procedure provides that " no person indicted or informed against for a felony can be tried unless he be personally present during the trial."

6. JUROR; WITNESS; *Deliberation and Separation of Jury.* While the jury were in their room considering of their verdict, one of their number being wanted as a witness was brought by the sheriff under direction of the court into the court-room, where he was sworn and examined as a witness, and then returned to his fellows in their room. *Held,* No error.

7. INSTRUCTIONS; *Weight of Testimony; Reasonable Doubt.* Where the court expressly charged the jury that they must be "satisfied of his (defendant's) guilt beyond a reasonable doubt," the jury could not have been misled, or the defendant prejudiced, by a statement elsewhere in the charge, that the presumption of innocence "will protect the defendant unless the state has overcome it by such proof as satisfies the jury of his guilt." .

8. TESTIMONY OF ACCOMPLICE; *Corroboration; Instructions.* Where the court in reference to the testimony of an accomplice advised the jury that it was unsafe to give it entire effect "unless he is so far corroborated as that the corroborating testimony shall render his statements credible," and that the corroboration "need not be as to everything to which he has testified, but if he be so far corroborated that the jury are convinced that he has told the truth," and also gives fully and clearly the reasons which render it unsafe to rely on such testimony, *held,* no error, although it was not said in express terms that the corroboration should be as to some material fact.

9. BURGLARY; *Degrees of; Verdict.* Though there be three degrees of burglary named in the statute, yet where the facts stated in the information constitute only the crime of burglary in the second degree, and the defendant could not be convicted of any other degree of burglary under it, a verdict finding the defendant guilty as charged, and not specifying in terms the degree of burglary, is sufficient, and judgment can legally be pronounced upon it.

*Appeal from Franklin District Court.*

INFORMATION filed in September 1877, charging appellant *Adams,* and three others (French, Kester, and Swope,) jointly, with the crimes of burglary in the second degree, and grand larceny. Swope was discharged by the prosecution to become a witness for the state. A trial was had at September Term 1877, as to French and Kester, and they were acquitted. A trial was also had as to *Adams,* at September Term 1877, and the jury disagreed. The case came on for trial again at the January Term 1878. The defendant moved for a change of venue, which was refused. He also applied for a continuance on account of testimony of an absent witness, one J. I. Reed, whose testimony was set forth in the defendant's affidavit. The state consented that such affidavit might be read as the deposition of Reed, and the motion for a continuance was overruled. Other facts and proceedings are stated in the subjoined opinion. The verdict of the jury, after the title, was —

"We the jury find the defendant, James M. Adams, guilty, as charged in the information."

New trial refused, and *Adams* was sentenced to confinement in the penitentiary for five years for burglary, and one year for grand larceny; and he now appeals, and brings the record here for review.

*Benson & Parkinson,* for appellant:

1. The court erred in allowing any evidence to be offered under the information, the same not having been verified; and in allowing the information to be verified after trial commenced. In *The State v. Otey,* 7 Kas. 69, there was a verification; in this case there was none. The statute requiring a verification is imperative; Gen. Stat. 831, § 67.

2. The motion for change of venue ought to have been sustained: 7 Iowa, 347; 21 Cal. 261; 4 Park. Cr. 602; 30 Wis. 129; 15 Kas. 407.

3. The continuance asked, ought to have been granted, the

21—20 KAS.

affidavit showing due diligence, and the evidence being material. *The State v. Thompson*, 5 Kas. 159, and *The State v. Dickson*, 6 Kas. 209, where a similar application was refused, were based on a rule of the supreme court, which has been abrogated.

4. The court admitted objectionable testimony, not relevant to the issue, to the prejudice of the defendant. The evidence relating to the "brace" tended to prove a distinct crime, in no way connected with the crime charged, and it was error to admit it: 36 Wis. 429; 2 Cush. 590; 1 Allen, 575; 29 Cal. 658; 1 Whart. Amer. Cr. Law, 648; *Lewis v. The State*, 4 Kas. 297; *Kinchelow v. The State;* 5 Humphrey, 9; 23 Mich. 101.

5. The court erred in permitting the jury to view the premises in the absence of the defendant. Bill of Rights, sec. 10; Crim. Code, §§ 316, 207; *Benton v. The State*, 30 Ark. 328; 3 Park. Cr. 25; 3 Whart. Am. Cr. Law, (7th ed.,) § 3160; 63 Mo. 300; 64 Mo. 67, 146; 24 La. An. 46. And there is no waiver in a criminal case, unless the record shows it; 16 Ark. 610; 3 Mass. 132.

6. The court had no right to separate the juror Miller from the rest of the jury, after the submission of the cause; and the sheriff not being sworn as a bailiff, had no authority to go to the jury-room, or to take a juror therefrom. 3 Park. Cr. R. 25; 1 Kas. 340; 4 Kas. 296, 312; 12 La. An. 710; 19 La. An. 143; 1 Whart. Cr. Law, § 707.

7. The charge is erroneous in this: First, it directs the jury to convict if "satisfied"—that is, upon a *preponderance* of the evidence—of defendant's guilt. 41 Wis. 480; 57 Mo. 502; 50 Ind. 190. And second, it fails to give the correct rule as to the corroboration of an accomplice, that is, that such corroboration must be as to some material matter connecting the defendant with the crime charged; 38 How. Pr. 369; 14 Kas. 135; 52 Ga. 527; 50 Ala. 109; 43 Texas, 608; 36 Ala. 230. Third, the court erred in defining "a reasonable doubt." The explanation does not explain. The jury had nothing to do with the "allegations," but only with the

proof. 5 Cush. 320; 50 Ind. 190; 50 Ala. 109; 30 Texas, 367.

8. The verdict was insufficient to warrant the judgment. It does not specify which crime the defendant is guilty of, nor the degree of either crime. *The State v. Reddick*, 7 Kas. 143; *The State v. Huber*, 8 Kas. 447.

*H. B. Hughbanks*, and *C. B. Mason*, for The State:

1. The first error complained of is, that the information was not verified according to law. That question has long since been settled in this court: *State v. Otey*, 7 Kas. 69. In that case the information was not sworn to at all, but the court decided that pleading to the merits, and going to trial, was a waiver. In this case the information had been sworn to, and everything was regular except the certificate of the clerk and the seal of the court. The court, on motion of the county attorney, ordered the clerk to attach his certificate and seal to the jurat. If this could be construed to be an amendment of form, or even of substance, the district court had full power to allow such amendments; (Crim. Code, §§ 72, 93;) and unless the defendant can show that he was injured, or that his substantial rights might have been prejudiced thereby, this court will not disturb the ruling in this behalf. 1 Swan, (Tenn.) 466; 13 Ark. 96; 1 Bish. Cr. Pr. § 113; 2 Sneed, 11; 30 Ala. 34; 31 Ala. 376.

2. The showing for a change of venue was not sufficient. It was overborne by the testimony of witnesses, far outweighing the statements of appellant's witnesses. It was not error to refuse it. Crim. Code, §§ 174, 177, 181; 4 Parker Cr. R. 602; 9 Cal. 298: 1 Bish. Cr. Pr., ch. 7; 58 Mo. 585; 49 Cal. 425.

3. It was not error for the court to overrule the defendant's application for a continuance upon the admission by the state of defendant's affidavit " as the deposition of the absent witness," Reed; Civil Code, § 317; Crim. Code, § 209; 6 Kas. 209; 9 Kas. 436; 10 Kas. 199; 13 Kas. 385; 14 Kas. 173,

The State v. Adams.

377; 11 Mo. 116; 12 Mo. 492; 16 Mo. 196; 19 Mo. 227; 20 Mo. 397; 37 Mo. 343; 43 Mo. 127.

4. Objection was made to testimony about the carpenter's brace, on the ground that it tended to show another offense. Now it would not be contended, aside from the testimony about the brace, that we could not show all that Adams said and did on the day of the burglary, which might in any manner throw light on the case; but when it is shown that he took a brace, then counsel for defendant, seem to imagine that the rule changes. Nothing of the kind. It is a familiar principle of law that he who commits two offenses cannot be in any better condition than he would have been if he had only committed one. 2 Cush. 582; 2 Parker Cr. R. 583; 1 Phil. Ev. 187; Roscoe Cr. Ev. 83; Burrill Cir. Ev., 436, 440; Whart. Cr. Law, § 649; *Folwell v. The State*, 14 Kas. 105. Such evidence will be admitted, not to prove a distinct crime, but to show intent, disposition, or preparation to commit the act complained of: *Rex v. Dassett*, 2 Car. & Kirwan. It will be observed from the foregoing authorities that this rule has been strictly adhered to for many years.

5. Considerable stress was laid on the fact in the argument of the motion for a new trial, that while the jury were out deliberating on their verdict, and the court being engaged in the trial of a civil case, and one of the jurors being a witness in said civil case, the court ordered the sheriff, who was not sworn as bailiff, to bring said juryman into court to testify, which was done. This the court could do under the law; Crim. Code, § 237. This is no new question. The law in such cases has been settled a great while; Co. Litt. 227; 4 Blacks. Com. 360; 1 Chitty Cr. Law, 517.

6. The objections raised to the instructions of the court, are not founded upon specific charges, but upon disconnected sentences. It is impossible to conceive of a more unsatisfactory mode of reviewing a piece of legal literature. It is neither analysis nor criticism, but rude surgery, mere amputation. Hilliard New Trials, p. 216, § 30, and page 460.

7. There was no error regarding the question of reason-

able doubt, when the whole charge is considered. "In a criminal case, to exclude reasonable doubt, the evidence must be such as to produce in the minds of prudent men such certainty that they would act on the conviction without hesitation in their own most important offices." *Jarrett v. The State*, Sup. Ct. of Indiana, Cent. Law Jour., Feb. 15th 1878.

8. Objection is made to the form of verdict. The jury found the defendant guilty as charged, and he was charged in the information with burglary in the second degree. It was argued on the motion for a new trial, that the verdict should have stated specifically what degree of burglary the jury intended to find the defendant guilty of. It has been decided that when the indictment and evidence showed a case of burglary in the first degree, a conviction of burglary in the second degree could not be sustained. (Kelley's Crim. Law, § 556; 56 Mo. 131; 14 Vt. 353.) There are no "degrees" of burglary under our statute. As matter of fact, the three different classes are all substantive offenses. The charge of one, would not be sustained by proof of a different. The word "degree" is used more to denote a distinction of punishment, than a "degree" in crime. Hil. on New Trials, 107, § 19.

The opinion of the court was delivered by

BREWER, J.: Defendant was convicted in the district court of Franklin county of the crime of burglary, and from such conviction has appealed to this court. Many errors are alleged, some of which present questions of importance and difficulty, while others have already been settled, or require but a passing notice.

I. It is claimed that the court erred in permitting the information to be verified after the trial had commenced. The record does not sustain this statement, or disclose any error in this respect. That which was done, was done at a prior trial, after a plea of not guilty had been entered, and a jury impanneled, and in which the jury disagreed and returned no verdict. And at such prior trial

1. Verifying information.

the information was not "verified," but the court permitted the clerk to sign the jurat and attach his seal, it appearing from his oral statement, not under oath, that the county attorney had in fact subscribed and sworn to the information before the filing thereof.   In this was no error prejudicial to the substantial rights of appellant, or of which he can now take any advantage. *The State v. Otey*, 7 Kas. 69.

II.  Again, error is alleged in overruling an application for a change of venue.  In support of the application the defendant filed the affidavits of seventeen persons, all showing 2. Change of venue; bias, and prejudice of people. more or less acquaintance with public opinion, some alleging that they had heard frequent threats against the defendant, and all expressing an opinion that there was such a prejudice against him as would prevent a fair trial.   In opposition thereto the state filed the affidavits of nineteen persons, showing fully as great if not a greater knowledge of the general talk and sentiment of the community, and expressing the opinion that there was no such prejudice against him, and that there was no reason why he could not obtain a fair and impartial trial.   Without noticing in detail all the matters referred to in these affidavits, we may say in general, that a perusal of them inclines us decidedly to the opinion that the ruling of the court was correct. So far as means of knowledge, opportunities for acquiring information, and the probabilities of a correct apprehension of public sentiment in this respect, are concerned, the state's testimony is equal if not superior to that of the appellant. There is a generality of statement on both sides.   Perhaps to a certain extent this is necessarily so; but in a view of such generality, the means of a witness's knowledge becomes an important factor in determining the value of his testimony. Again, while some of the appellant's witnesses say they have heard threats, they give the names of no persons who have made these threats, nothing by which the state could investigate or contradict such allegations.   Again, it would be strange if, after a party had been arrested and tried before one jury, which disagreed, and then arrested on further charges,

(for at the time of this application there were three informations filed against him,) there was not considerable talk about him, and the charges, and expressions of opinions *pro* and *con* thereon. And scarcely any case of importance occurs in which, between the arrest and the trial, expressions equally as strong and bitter with those alleged here could not be shown to have been made by many persons. We are not satisfied from these affidavits, and cannot hold, that the district court ought to have found prejudice in the community such as to warrant a change of venue.

III. The motion for a continuance was properly overruled. *The State v. Thompson*, 5 Kas. 159; *The State v. Dickson*, 6 Kas. 209. These decisions may have been based upon a rule of this court since repealed; but notwithstanding, they are still authority, for in lieu of the rule is an enactment of the legislature of the same import, and equal force. Gen. Stat. p. 689, sec. 317; p. 854, sec. 210.

IV. Error is alleged in the admission of testimony, in this, that evidence was admitted which simply tended to show defendant guilty of another offense, and in no manner tended to connect him with the crime charged. The rule of law applicable to questions of this kind is well settled. It is

4. Evidence; distinct offenses; relevancy and competency.

clear, that the commission of one offense cannot be proven on the trial of a party for another, merely for the purpose of inducing the jury to believe that he is guilty of the latter, because he committed the former. You cannot prejudice a defendant before a jury by proof of general bad character, or particular acts of crime other than the one for which he is being tried. And on the other hand, it is equally clear, that whatever testimony tends directly to show the defendant guilty of the crime charged, is competent, although it also tends to show him guilty of another and distinct offense. *The State v. Folwell*, 14 Kas. 105. A party cannot, by multiplying his crimes, diminish the volume of competent testimony against him. A man may commit half a dozen distinct crimes, and the same facts, or some of them, may tend directly to prove his guilt of all; and on

the trial for any one of such crimes it is no objection to the competency of such facts, as testimony, that they also tend to prove his guilt of the others. By this rule, whatever is done in preparation for a crime, or in concealing the fruits, is competent, although in such preparation or concealment is committed another and distinct offense. And wherever there is testimony showing a conspiracy to commit a crime, evidence of acts done intermediate the conspiracy and the crime, in preparation of means for such crime, is competent, and that notwithstanding through some outside intervention the means so prepared are not actually used, but the crime is otherwise accomplished. Within the scope of these rules comes the testimony objected to in the case at bar. The facts are these: The charge was burglary, in breaking into a store. The information was against four parties. One was called as a witness by the state, and, admitting himself to be an accomplice, testified that all four were engaged in the burglary; that they all met, two nights prior thereto, and arranged for committing the crime, and fixed the time at which it should be committed; that defendant then said that a bar of iron and a pair of pinchers was all that was needed, and he would get them; that at the time appointed all met, and defendant had with him the bar of iron and the pinchers. Other witnesses testified that on the day before the burglary they saw this defendant, and one of the other parties charged with the crime, sitting together in a store engaged in conversation for a long time. And then a witness was permitted to testify that he saw this defendant coming out of the same store, after such conversation, with a carpenter's brace, which he hid behind some coffin boxes, and which, after his departure, was taken and returned to the owner. This last is the testimony objected to. As detailed by the witnesses it establishes an independent crime, that of larceny. As such, say counsel, it is incompetent. Nor is it competent as evidence of preparation, for the brace was not an instrument intended to be used, or in fact used in the burglary. To this we reply, that the state, having offered evidence of a conspiracy and agreement

between the parties to commit the crime, might properly show any conduct or acts of either thereafter tending to sustain the evidence of the agreement, and indicating preparation to accomplish the crime, or remove the fruits. It is not essential that the state establish beyond peradventure that the acts or conduct were based upon the conspiracy, or in reference to the crime; it is enough that they harmonize with and tend to confirm the charge of the conspiracy, and are reasonably indicative of preparation for the crime. If no act or conduct of the defendant could be shown, unless the motive therefor, or the connection between it and the crime, were made undisputably clear, the range of inquiry would be limited and narrow. It is enough that the act has an apparent or probable connection with the crime; and then the motive of the defendant, and the weight of it as testimony, are to be considered by the jury. The fact that defendant and another of the four implicated in the conspiracy were engaged for a long time in private conversation the noon prior to the burglary, may of itself, when the nature and substance of their conversation is unknown, prove nothing; yet it is a circumstance harmonizing with the alleged conspiracy, and proper for the consideration of the jury in determining whether there was, as charged, such a conspiracy. So, while the testimony of the accomplice is, that a bar of iron and pinchers were to be and were the instruments of the crime, may not the state show that defendant was engaged between the conspiracy and the crime in procuring other instruments therefor? That a brace and bit might be very serviceable in forcing an entrance through a door, cannot be doubted; that the brace stolen by defendant was not used in the burglary, was prevented by the act of one who witnessed its larceny; that it was intended to be so used, is not affirmatively shown. But inasmuch as it was an instrument one intending burglary might naturally seek to obtain, as it was taken intermediate the conspiracy and the crime, and immediately after a long interview between two of the conspirators, the taking and concealment of it was a circumstance which might fairly be

presented to the jury for their consideration. Suppose, that instead of stealing a brace, the defendant had on that day gone many miles away and brought his own brace thence to a place whence it could easily be obtained on the coming night for the contemplated burglary, and that then, without the knowledge of defendant, it was taken away by some third party: could not this circumstance be shown, and that, notwithstanding the testimony of the accomplice as to what was agreed to be and what was in fact used? Would not the act be one tending to show preparation — a preparation made fruitless by the unexpected act of another? Could it not be shown that one charged with homicide, immediately prior thereto, was providing himself with several weapons, though only one was in fact used? and if so, does the manner in which he so provides himself affect the competency of the testimony? If one weapon he stole, one he borrowed, and one (his own) he simply put in order, would proof as to the first be incompetent, while evidence as to the others was admissible? and must it be affirmatively shown that each weapon was procured with reference to the homicide, before evidence concerning its procurement is competent? or are the facts concerning all to be put in evidence, leaving their weight to be determined by the jury? This we think must be laid down as the true rule: that where there is evidence of a conspiracy to commit a crime, and of its subsequent commission, the state may in support and corroboration thereof show any act or conduct of the alleged conspirators intermediate the conspiracy and the crime, which apparently recognizes the existence of the conspiracy, or reasonably indicates preparation to commit the crime, or preserve its fruits; and this, notwithstanding such special act of preparation was not the one discussed and agreed upon by the conspirators, and is rendered actually fruitless and unavailing by the unexpected interference of third parties, and also involves the commission of another and distinct crime. *The State v. Crowell*, 12 Nev. 337; *Hester v. Commonwealth*, Sup. Ct. of Penn., 6 Cent. Law Jour. 395.

V. During the trial the court sent the jury in charge of an officer to examine the place of the burglary. One of the jurors, being familiar with the locality, was directed to show the same to his fellows. Neither judge, attorneys, nor de-fendant, accompanied the jury during this in-spection. The record does not show whether defendant applied for leave to accompany them, or not. It simply shows that the jury went alone with the officer. And this, it is claimed, is fatal to the proceedings. This claim is based upon section 10 of the bill of rights, which provides, that—

5. Trial; presence of accused; constitutional rights.

"In all prosecutions the accused shall be allowed to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, and to have compulsory process to compel the attendance of witnesses in his behalf," etc.

And see § 207 of the code of criminal procedure, which reads that—

"No person indicted or informed against for a felony can be tried unless he be personally present during the trial," etc.

Section 316 of the code of criminal procedure is the one under which this proceeding was had. It reads —

"Whenever in the opinion of the court, it is proper for the jury to have a view of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that pur-pose. While the jury are thus absent, no person other than the officer, and a person appointed to show them the place, shall speak to them on any subject connected with the trial."

This claim of appellant finds some warrant in the author-ities. In 3 Whart. Am. Cr. Law, (7th ed.,) § 3160, it is said, that the defendant ought to be permitted to accompany the jury in such a visit of inspection. In *The State v. Bertin*, 24 La. An. 46, it was held that where the defendant was not per-mitted to accompany the jury, there was fatal error; while the case of *Benton v. The State*, 30 Ark. 328, to the same effect, is on all-fours with the case at bar. There the record is silent as to any request of defendant, and simply discloses

that as a fact the jury went alone in the charge of the officer. There also a juror, and not an outside party, was appointed to show the premises. In these respects the cases are parallel. More than that, the Arkansas constitution and statute are like ours. So that the case is squarely in point. Notwithstanding, we cannot concur with these authorities, and are of opinion that the action of the court was authorized by the statute, and without error. Sec. 316, above quoted, plainly authorizes just what was done. They were conducted in a body under charge of an officer. So the statute reads. One of their number was appointed by the court to show them the place. So runs the language of the section. Nothing is said in it about the presence of the defendant, the attorneys, the officers of the court, or the judge. On the contrary, the language seems to imply that only the jury and officer in charge are to be present. The trial is not temporarily transferred from the court-house to the place of view. They are "to be conducted in a body" "while thus *absent.*" This means that the place of trial is unchanged, and that the jury, and the jury only, are temporarily removed therefrom. Just as when the case is finally submitted to the jury, and they "retire for deliberation," there is simply a temporary removal of the jury. The place of trial is unchanged. And whether the jury retire to the next room, or are taken to a building many blocks away, the effect is the same. In contemplation of law the place of trial is not changed. The judge, the clerk, the officers, the records, the parties, and all that go to make up the organization of the court, remain in the court-room. The jury retire to discharge one duty connected with the trial, and yet, though absent while discharging that duty, inasmuch as it is done under the direction of the court, and while in charge of an officer appointed by the court, they are in legal contemplation in the presence of the court. Though the defendant may not go with them into their place of retirement, he is nevertheless personally present during that portion as well as the rest of the trial. Sec. 207 is of no higher au-

Sec. 316, criminal code, construed.

thority than section 316. The defendant must be personally present, says the one; the jury may retire to view the place, says the other. Section 207 does not imply that the defendant must be with the jury, and keep in their presence all the time, but rather that he must remain with the court, and keep in its presence. The court is the fixed and permanent thing; the jury only temporary, and serving but a partial purpose in the trial. And the defendant must be in the presence of the court, to be personally present during the trial. So that as between the two sections of the statute there is really no conflict; and in exercising the discretion conferred by the one, the court in no manner violated the other.

So far as the provision in the bill of rights is concerned, there are two questions. 1st: Is it anything more than the grant of certain privileges, which an accused may waive? and where the record shows no application for the benefit of such privileges, and no refusal of the court to grant them, and no objection to any action of the court thereon, is there any error? And 2d: Does the sending of a jury to view the place of the alleged crime, in the absence of the defendant, trespass on any of its guaranties? *First:* The language is permissive. "The accused shall be allowed;" that is, he may have if he wishes. If he does not wish, he may forego. If he does not wish them, he cannot complain that they were not forced upon him. Generally that which is a mere personal privilege, which is not essential to jurisdiction, which is not absolutely and peremptorily required by statute or public policy, may be waived. In the case of *The State v. Polson,* 29 Iowa, 133, the defendant consented that a copy of the testimony given in a former trial might be read as evidence instead of an oral examination of witnesses, and he was held concluded by such consent. His right to meet the witnesses face to face, he had waived. So while he is entitled to have counsel, he is not compelled to have them. He has a right to a subpena for his witnesses, but he is not obliged to have one issued. And

*Constitutional rights of accused; waiver.*

the record need not show that these privileges or rights were formally tendered to him and formally declined, or that an express waiver was signed. It is enough if it does not appear that they were denied when he applied for them. So there are many other matters which his failure to object to at the time prevents his afterward complaining of. If a leading question be asked, he must object at the time, or the error is waived. If an instrument, not properly authenticated, or a deposition, be offered in evidence, and he remains silent, he cannot thereafter complain. If to avoid a continuance he consents that an affidavit be read as the testimony of an absent witness, he is estopped to say that he did not meet the witness face to face. Documentary evidence brought from a distant state is competent testimony, notwithstanding said section 10. (*People v. Jones*, 24 Mich. 215.) Contrast the language of said section 10 with that in section 207, above quoted. He "shall be *allowed*." "No person *can* be tried." The one expresses a privilege to the defendant, the other a condition of valid trial. Further, the origin of these provisions in the bill of rights indicates the extent to which they should be carried. It is well known that at the old common law the defendant was allowed no counsel. The judge was supposed to look after his rights. He was not allowed any witnesses in his own behalf. It was considered derogatory to the crown to contradict or impeach its witnesses. To obviate this injustice, and secure to the accused the right of a full defense, was the purpose of these provisions. That purpose is accomplished when he has the undeniable right to employ counsel and summon witnesses. We are of opinion therefore, that the fact that the jury were sent in a body under charge of an officer to view the place of the crime, unaccompanied by the defendant, is not necessarily an error fatal to the trial, and that where the record discloses no objection thereto by the defendant, and no application for permission to accompany them, and no error alleged on account thereof in the motion for a new trial, it is too late to insist in this court that the judgment must be reversed there-

for. It is unnecessary therefore to consider the second branch of the question as to whether it would be error if challenged by the defendant at the time.

VI. Again, while the jury were in retirement, consulting as to their verdict, one of their number being wanted as a witness in a case, the district court sent the sheriff to the jury-room, had the juror brought into court, examined as a witness, and then returned to the jury-room. In this we see nothing which could by any means work injury to the substantial rights of the defendant. The juror was all the while in the charge of an officer, or in the immediate presence of the court. There was no opportunity for tampering with him, ascertaining the state of the deliberations of the jury, or any other possible mischief. The propriety of such a separation depends upon the urgency of the need for such juror's testimony, and must rest largely with the discretion of the court.

*6. Juror as witness in another case.*

VII. The instructions are challenged in three or four respects. It is said that the court used the word "satisfy," with reference to the conviction produced by the testimony upon the minds of the jurors, without coupling with it the phrase "beyond a reasonable doubt," and thereby conveyed the idea that a mere preponderance of testimony was sufficient. But "to be *satisfied* of the truth of a fact or proposition, in law, is to have every reasonable doubt of its truth removed from the mind." *Field v. Kinnear*, 5 Kas. 237; 1 Greenleaf Ev., § 2. And besides, where the court was speaking directly of the conviction to be reached by the jury, it distinctly charged that they must be satisfied beyond a reasonable doubt. Taking the charge as a whole, the jury could not have been misled.

*7. Instructions; weight of testimony; reasonable doubt.*

VIII. In reference to the testimony of the accomplice, the jury were advised that it was unsafe to give it entire effect "unless he is so far corroborated as that the corroborating testimony shall render his statements credible," and that the corroboration "need not be as to everything to which he has testified, but if he be so far corroborated

*8. Testimony of accomplice.*

that the jury are convinced that he has told the truth." We see no error in this. If the jury were convinced by the corroborating testimony that the accomplice had testified to the truth, they were justified in giving credence to his testimony. His unaided testimony is legally sufficient to sustain a verdict; 1 Wharton Am. Cr. Law, 7th ed., § 785, and cases cited in note; *State v. Hyer*, Sup. Ct. New Jersey, 5 Reporter, 505. But it is always proper to advise a jury not to convict upon it alone, and for reasons which in the charge in this case the court well and clearly stated to the jury. And when the reasons are so clearly given, and the advice repeated once and again, we see no grounds of error in that the court did not in terms say that the corroboration should be as to some material fact.

The defendant asked an instruction in reference to circumstantial testimony, based on the decision of this court in Circumstantial *Horne v. The State*, 1 Kas. 42. It was properly evidence. refused, first, because this case contained positive as well as circumstantial testimony, and the instruction seemed to imply that the case rested solely on the latter; and secondly, the court had already sufficiently stated the rule as to such testimony when it charged, that the "circumstances must be such that wholly satisfy the minds of the jurors that the fact not only may have existed, but necessarily must have existed from the facts proven." A distinction between the two is not easily perceptible.

IX. A final objection is, that the verdict does not specify the degree of crime of which the defendant is found guilty. The crime charged was burglary. There are three degrees 9. Burglary; of burglary. The verdict found the defendant degrees of; guilty as charged. Hence error is claimed, on statute construed. the authority of *The State v. Reddick*, 7 Kas. 143, and the *The State v. Huber*, 8 Kas. 447. The authorities are not in point. The facts stated in the information constituted burglary in the second degree, entering a store in the night-time. Under that information the defendant could not have been convicted of any other degree of burglary. Burglary

in the day-time is not included in burglary in the night-time. *The State v. Behee,* 17 Kas. 402. But section 239 of the code of criminal procedure, (Gen. Stat., p. 859,) upon which the decisions above cited were based, reads: "Upon the trial of any indictment or information for any offense, where by law there may be conviction of different degrees of such offense, the jury, if they convict the defendant, shall specify in their verdict of what degree of the offense they find the defendant guilty." But under the information before us, there could be no conviction of burglary in any degree other than the second. Different degrees were not included in the charge. Hence the section does not apply, and the verdict could have reference to only the one offense charged.

Upon the whole record then we see no error of which defendant can justly complain, and the judgment must therefore be affirmed.

All the Justices concurring.