## THE STATE OF KANSAS V. BRUCE FURBECK.

1. CHANGE OF VENUE, *When Justified.* Before a court is justified in sustaining an application for a change of venue on account of the prejudice of the inhabitants of the county, it must affirmatively appear from the showing that there is such a feeling and prejudice pervading the community as will be reasonably certain to prevent a fair and impartial trial.

2. ERROR, *Not Sufficient to Reverse Judgment.* Although the trial court may err in overruling a question propounded to a juror upon his *voir dire,* yet the error will not be sufficient to justify a reversal of the judgment when the record fails to show that the defendant challenged the juror either for cause or peremptorily, or that the defendant made any peremptory challenges.

3. JUDGMENT, *Not Set Aside.* Where improper testimony is admitted and no exception taken thereto, and thereafter on motion of the defendant the jury are instructed to disregard all such testimony, *held,* that no sufficient ground is laid for setting aside the judgment.

4. DISCRETION OF COURT, *Not Abused.* It is a matter resting largely within the discretion of the trial court, whether pending the trial it will delay the proceedings for the purpose of enabling the defendant to bring in additional testimony. And *held,* that in this case it cannot be said that the court abused its discretion.

5. PETIT LARCENY; *Judgment Not Reversed.* Where a defendant is charged with grand larceny, and the testimony does not affirmatively and clearly show beyond dispute that the property charged to have been stolen was or was not of the value of $20 or over, the mere fact that eleven of the jury at first voted the defendant guilty of grand larceny, while one voted not guilty and said that he believed the defendant innocent of any crime, but afterward concurred with the rest in a verdict of guilty of petit larceny, does not justify this court in setting aside the judgment pronounced by the trial court upon such verdict.

### *Appeal from Trego District Court.*

AT the May Term, 1882, of the district court, *Bruce Furbeck* was convicted of the crime of petit larceny, and sentenced to pay a fine of $50 and the costs of prosecution, and to be committed to the jail of Ellis county until said fine and costs were paid. From this judgment he appeals. The facts appear in the opinion.

*David Rathbone,* and *T. T. Tillotson,* for appellant.

*S. J. Osborn,* county attorney, for The State.

The opinion of the court was delivered by

BREWER, J.: The defendant was convicted in the district court of Trego county of the crime of petit larceny, and from such conviction has brought his appeal to this court.   He alleges as error, first, that the district court erred in overruling his application for a change of venue.   This application was based on the ground of an alleged prejudice on the part of the inhabitants of Trego county.   The application was both supported and opposed by many affidavits, and the question is, whether upon the affidavits such a showing of prejudice was made as compels us to reverse the decision of the trial court. The statute under which the case of *Smith v. The State,* 1 Kas. 365, was decided has been changed, and the change of venue no longer rests upon the mere affidavit of the defendant. (Comp. Laws 1879, p. 752, § 177; *The State v. Horne,* 9 Kas. 119; *City of Emporia v. Volmer,* 12 Kas. 622; *The State v. Bohan,* 15 Kas. 407; *The State v. Adams,* 20 Kas. 311.) The facts stated in support of the application are substantially, that the prosecuting witness is a local preacher and treasurer of the county, and by reason thereof, possessed of great influence; that he has given his unqualified opinion that the defendant is guilty of the crime charged; has publicly expressed a determination to convict the defendant, even though it cost him a large portion of his salary; that another party, who was a witness on the preliminary examination, and assisted in the search for the property alleged to have been stolen, has caused certain articles to be published in *The Wakeeney World,* a paper published and of general circulation in said county, reflecting on the defendant and his witnesses and the methods employed by his counsel.   The articles referred to are attached to the application.   We have examined these articles, and find in them nothing more than ordinary newspaper accounts of an alleged crime, the arrest of the party charged,

and the preliminary examination. They are simply records of matters of public interest, alleged to have taken place; they contain no denunciations, invectives, appeals to passion, or efforts to create a prejudice against the defendant. If they did create a prejudice, it is simply because the matters stated therein to have been done by the defendant are not popular with a community which believes in respecting the rights of property. The affidavits of the state by several witnesses show a general knowledge of the feeling and opinions of the community, and tend to show that the alleged crime has not been a subject of general comment, and has aroused no feelings of passion or prejudice. Taking all the facts together as detailed in the several affidavits, we cannot see that there was any error in overruling the application for a change of venue. We see nothing which indicates any popular excitement, any deep feeling pervading the community, anything which would prevent a full, fair, and impartial trial. The prosecuting witness may be a man of character, standing and influence, firm in his belief of defendant's guilt, and determined to use his own means in carrying on the prosecution and to secure the defendant's conviction. Yet such a fact is not likely to sway the passions or arouse the prejudices of the community, especially in a case where the offense charged is simply the stealing of a few sacks of wheat. Neither is a newspaper account of the preliminary matters likely to be any more potent. We see nothing in this to justify any interference with the judgment.

Again, it is claimed that the court erred in overruling a question put to a juror on his *voir dire*. We think the question was competent and relevant, and should not have been overruled; unless it be true, as suggested by the state in its brief, that the examination of the juror had been unnecessarily protracted and accompanied by needless repetitions. The record, however, contains only this single question; and that being the only one, we think the court should have permitted it. The record also shows that this juror was one who was finally sworn and sat in the trial of the case. But the record

fails to show that this juror was challenged either peremptorily or for cause, or even that the defendant made any peremptory challenge.   Hence we think it must be held that the error was waived.   (*Morton v. The State,* 1 Kas. 468; *Wiley v· Keokuk,* 6 id. 94.)

Again, it is claimed that the court erred in permitting the state to prove in the first instance that the defendant and his parents had the reputation of being thieves.   That such testimony was incompetent is beyond dispute.   (*The State v. Thurtell,* ante, p. 148.)   Nevertheless, the error in its admission cannot avail the defendant, and this because no exception was saved to the ruling of the court admitting it.   Further, it appears that after its admission the defendant moved to strike it out, and thereupon the court instructed the jury to disregard all of such testimony.

Again, error is alleged in the following ruling of the court: As heretofore stated, the charge in this case was the larceny of a few sacks of wheat.   The testimony disclosed that the prosecuting witness had raised one hundred and ten bushels of wheat, that twenty-four bushels thereof were alleged to have been stolen, and the balance, eighty-six bushels, was sold and delivered to a Mr. Rhett, a grain merchant at Ellis; that eighteen bushels of wheat were taken from the defendant's cellar on a search warrant, and were at the time of the trial in the possession of the justice of the peace who issued the search warrant.   This justice lived about fifteen miles from the place of the trial.   Now in the midst of the trial the defendant moved the court to send the jury out to examine the wheat at the justice's, or to send an officer with compulsory process to bring in the wheat, and stated that during the absence of the jury or the officer he would secure the attendance of Mr. Rhett as a witness.   This was for the purpose of showing that the wheat found in defendant's cellar was in weight, grade and quality unlike that sold to Mr. Rhett.   The court declined to delay the trial for this purpose, and of this action the appellant now complains.   We see no error in the ruling.   While a court may send a jury out to examine the place in which

any material fact occurred, (Comp. Laws 1879, p. 768, § 316; *The State v. Adams*, 20 Kas. 322,) yet no application of this kind was made to this court. It was not to examine the place from which the property was alleged to have been stolen, or the place in which this wheat was found, but to examine the wheat itself. Neither can we say that the court abused its discretion in refusing to delay the trial for the sake of bringing in this wheat and securing the testimony of Mr. Rhett. The matter of identity is one which should have been anticipated and prepared for by counsel, and no excuse for a failure to do so is shown. As to the objection that the verdict is contrary to the evidence, it is enough to say that it does not affirmatively appear that all the testimony is preserved.

The only other question we deem of sufficient importance to require special notice arises on the motion for a new trial. It is claimed that the verdict was not the just expression of the convictions of all the jurors, but was simply a compromise between those who believed the defendant guilty of grand larceny and those who believed the defendant innocent of any crime. In support of this motion the affidavits of the bailiff and one of the jurors were filed. In regard to the affidavit of the juror, it may be remarked that the affidavits of jurors are seldom received to impeach a verdict, though often to sustain it; (*The State v. Horne*, 9 Kas. 132; *Perry v. Bailey*, 12 Kas. 139;) and they are never received for the purpose of impeachment to show anything that inheres essentially in a verdict such as the personal opinion of the jurors. Stripping these affidavits of all that show mere personal convictions of the juror, and they show simply this: that at the close of the second ballot, which resulted in a vote of eleven for conviction and one for acquittal, the one juror who voted for acquittal said that he was surprised at the vote; that he believed the defendant innocent, but was willing to agree on a verdict of petit larceny, which on the next ballot was accepted by all. The value of the property charged to have been stolen does not appear to have been shown beyond dis-

pute to be in excess of $20, and was found by the jury to be $19.62.   It does not appear that the jury were out any length of time, or that there was any serious or protracted dispute between them.   Under these circumstances ought the verdict to be set aside?   We think not.   It is no uncommon thing for a jury upon first consultation to disagree as to the verdict, and to finally reach the result only upon consultation, discussion, and yielding of extreme notions on the part of some.   And when the testimony is such as clearly to justify the result finally obtained, and no undue influence appears to have been exerted, the mere fact that concessions were made on both sides of those holding the extreme views does not justify a court in disturbing the verdict.   This case is unlike that of *The State v. Bybee,* 17 Kas. 462, for in that the testimony left only this alternative: either the defendant was guilty of an offense much more heinous than that of which he was found guilty by the verdict, or else he was innocent of all crime; and the testimony showed such a condition that it was evident that the verdict did not express the convictions of any of the jurors, but was simply a result reached by undue pressure.   Here there was no outside pressure, no attempt on the part of the court to extort a verdict, and all that can be said is, that those representing extreme views on either side conceded a little for the sake of unanimity.   We of course must assume that the jurors were all honest men, and that they finally concurred in the result they announced.   Hence we think the court did not err in refusing to disturb the verdict.   There being no other question we deem of sufficient importance to require notice, and upon the whole record there appearing no material error, the conviction will be affirmed.

All the Justices concurring.