HENRY LOGGINS *v.* THE STATE.

1. JURY LAW — PRACTICE IN COURT OF APPEALS.— Unless objection is shown to one or more of the jurors who tried the case, this court will not revise the rulings of the court below on the competency or incompetency of jurors who were challenged. If, however, the defendant exhausted his peremptory challenges, and afterwards the court erroneously overruled his challenge of a juror for cause, and forced the objectionable juror upon him, the error in the ruling is cause for reversal. For a full exposition of these rulings by a majority of the court, consult the opinion on rehearing. (Hurt, J., dissenting.)

2. PROOF OF CONSPIRACY — ORDER OF EVIDENCE.— When it is sought
to charge the defendant on trial with the acts or declarations of a
confederate, and the proof of the complicity consists of numerous
and independent circumstances, it is not imperative that the proof
of the conspiracy be introduced before that of the acts or declara-
tions. If in such a case the entire evidence suffices to establish the
conspiracy, it will be considered immaterial whether the proof of
that fact preceded or followed that of the acts or declarations.

3. SAME.— Whether the proof of the conspiracy is sufficient as the
predicate for that of the imputed acts or declarations is primarily a
question for the trial judge in passing upon the admissibility of
the evidence; but nevertheless the fact of a conspiracy remains for
the determination of the jury, and when it is an issue in the case it
should be submitted to them with instructions to disregard the
acts or declarations unless the conspiracy was proved. See in-
structions of this character held correct and sufficient.

APPEAL from the District Court of Austin. Tried
below before the Hon. L. W. MOORE.

At page 435 of Volume 8 of these Reports will be found
the case of *Henry Loggins* v. *State*, on appeal from a
former conviction for murder in the first degree and an
assessment of a life-term in the penitentiary. The present
appeal is from a second conviction and a similar assess-
ment. In nearly all substantial particulars the evidence
at the last trial was the same as that at the first, which is
sufficiently embodied in the former report of the cause.
At the last trial in the court below, however, the evidence
held incompetent on the former appeal was not intro-
duced or offered, and the State examined S. H. Sartain, a
new witness, whose testimony is sufficiently stated in
the opinion of this court.

Reuben Morris, the deceased, who was a cousin of the
appellant, was fired upon and instantly killed while
driving in a buggy on a public road in Waller county, on
July 9, 1879. The appellant, together with his father
Reuben Loggins, and his cousin Williford Loggins, was
indicted for the murder at the ensuing term of the Dis-
trict Court of the same county, and on their application

the venue was changed to the adjoining county of Austin, where, at the instance of his co-defendants, a severance was had and priority of trial awarded to the case of the appellant.

*Hume & Shepard*, for the appellant. This case had been reversed after its first trial because the court admitted evidence of other declarations of Reuben Loggins made a few days before the killing. There was then no proof of a conspiracy. The proof is the same in the present record. There is no pretense, on the part of the State, to show a conspiracy, before the killing, between the parties. It would seem only necessary to cite the report of the case as it appears in 8 Texas Ct. App. 434.

The court undertook to cure the error by promising to control it in its charges.

If the admission of incompetent evidence ceases to be error because the court may control its effect in a charge to the jury, then the distinct functions of court and jury are separated no longer, and the court will be compelled, in a manner, to sum up the testimony. To permit such practice is to destroy the boundaries which the law has erected between the provinces of court and jury, and which have been defined in eloquent language by this court. (*Harrison* v. *State*, 9 Texas Ct. App. 409; *Hodde* v. *State*, 8 Id. 382; *Brown* v. *State*, 23 Texas, 200.)

It is impossible to tell what injury may be done by the admission of a single portion of illegal evidence. It appears insignificant sometimes, until it is made important and potent in the argument of ingenious counsel who close for the State, leaving the defendant without reply.

It sometimes occurs, in cases of this kind, that the court must determine, as a question of fact, if there be sufficient evidence of a conspiracy to permit declarations of a co-conspirator to go to a jury. This is absolutely

necessary where there is evidence tending to show a conspiracy, or the State proposes to give full evidence thereof at a later period. But this power to pass upon facts must be jealously guarded; for the danger is great that the declarations themselves will often be taken by the jury as evidence of the existence of a conspiracy.

The discretion confided to the courts is limited to the necessity. When no evidence of conspiracy is given; and no promise by the State is made that it will be supplied during the trial, there is no more excuse for the admission of incompetent evidence of declarations than there would be for the admission of improper evidence of another kind. If an error in the admission of this evidence can be cured by a charge, then all errors in the admission of evidence may be cured by a charge, which may tell the jury what evidence to consider and what to reject. Is this practice to be tolerated?

This court has said: "That the better practice would be to require the State to first prove the conspiracy before admitting in evidence the acts, doings and declarations of a co-conspirator, is conceded; but if this is shown at any stage of the trial, there could be no injury to defendant. It frequently happens that the promise to lay the predicate is not fulfilled and the judge is forced to withdraw the evidence, which can never be successfully done; hence the danger to the defendant." *(Davis* v. *State,* 9 Texas Ct. App. 365; 24 Am. R. 580.)

In the case at the bar there was not even "a promise to lay the predicate."

The mere fact that the parties may have acted together in the commission of the offense is no evidence of a previous conspiracy. If it be, then all the offenses in which two or more persons are engaged are results of previous conspiracies. *(Loggins* v. *State,* 8 Texas Ct. App. 442.)

Admitting, for the sake of argument, that there was

no error in the action of the court discussed under the preceding proposition, we maintain that the instruction of the court is not itself correct:

1. The jury should have been told what constitutes a conspiracy under our law. (Criminal Code, art. 800 *et seq.;* see also *Riojas* v. *State,* 9 Texas Ct. App. 95; *Fulcher* v. *State,* 41 Texas, 233.)

2. The jury should have been told that they must first find from the evidence, exclusive of the declarations of the party, whether, at the time they were made, this conspiracy did in fact exist.

3. If this be found in the affirmative, then it must appear in the same way that the defendant joined in the conspiracy before its completion. If both facts were found to appear, then the declaration could be considered.

. These elements do not appear in the charge given.

It was error to refuse to permit defendant to show by the witness, Sartain, the location, value, etc., of the two hundred and twenty-five acres of land which was left unconveyed by Reuben Morris to Henry Loggins.

The object of the State in offering Sartain's evidence about the deeds was to show a motive to kill Reuben Morris, operating upon Reuben Loggins and appellant. It is weak and remote; but, having been admitted, the defendant should have been permitted to rebut the probable presumption of motive by showing that the land was of great value, and for that reason defendant would not have sought Morris's life while the title was unperfected.

The antidote should at least have been permitted to follow the poison. The facts bear out this statement.

*H. Chilton,* Assistant Attorney General, for the State.

*Joseph Boone,* also for the State. If the facts in evidence showed or tended to show a conspiracy between

Reuben Loggins and his confederates or any other person to murder Reuben Morris, then it will be conceded that it was not error to permit the testimony of S. H. Sartain to go to the jury under proper instruction from the court.

It is well in the outset to consider what a conspiracy is and to inquire how it may be proven. Bouvier defines it thus: "a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." (Bouv. Dict. vol. 1, p. 333, and authorities there cited.) Similar to this is the definition given by Mr. Webster: "a combination of men for an evil purpose; an agreement between two or more persons to commit some crime in concert." Such is substantially the definition given by our Code.

"A conspiracy can be proved as well by the acts of the conspirators as by any declarations they may have made touching their intended or accomplished designs." (*Whitmore* v. *Allen*, 33 Texas, 356.)

"The fact of conspiracy need not be proved on the trial, but may be collected by the jury from collateral circumstances." 1 Black Rep. 392; Stra. 144. "A conspiracy may be proved by circumstantial evidence. All parties performing disconnected acts, and contributing to the same result and the consummation of the same offense, may, by the circumstances and their general connection or otherwise, be satisfactorily shown to be conspirators and confederates in the commission of the offense." (*Kelly* v. *The People*, 55 N. Y. 595; reported also in 14 Am. Reports, 342.) Mr. Roscoe says "proof may be made by express evidence of the fact of a conspiracy together or of a concurrent knowledge and approbation of such others' acts." Roscoe Cr. Ev. 383. Mr. Wharton says, that when a conspiracy is shown to exist

it is usually done "inductively from circumstances." 2 Whart. Cr. Ev. sec. 1205.

In the case at bar the trial court fairly submitted the question of conspiracy to the jury under all the facts of the case. It was a question by them to be determined, not as primarily affecting the guilt or innocence of the defendant then on trial, but to aid them in properly estimating all the facts before them. It was not an independent material issue, and therefore it was not incumbent upon the court to define what a " conspiracy " is, or who may be conspirators, if, indeed, any definition however learned can to the non-professional mind convey any clearer conception than do the words themselves. It becomes a pertinent issue here only in view of the objections urged by counsel for appellant in the trial below, and presented by their assignment of error for revision in this court.

Counsel for the prosecution in the trial were in no manner called upon to state, or even to indicate, that at any period of time the State would offer proof to show a conspiracy between the defendants jointly indicted, existing before the homicide. Neither at any time or point during the trial was it incumbent upon the State to indicate in advance any portion or character of evidence thereafter to be introduced; nor by objection to testimony or by motion to exclude had defendant on trial any peculiar right to challenge the State so to do, as the intimation seems to be.

But if it was error to admit the testimony of Sartain, the error of the court was fully cured by the charge of the court in reference to said testimony. The charge is a clear, lucid and correct enunciation of the law, and could not mislead the jury as to the legal effect of this testimony. *Loggins* v. *State*, 8 Texas Ct. App. 434. The facts of the case of *Jack Post* v. *State*, 10 Texas Ct. App. 580, do not more clearly indicate or establish a con-

spiracy existing between Jack Post and Nelson Post to murder McDermott than do the facts of this case indicate and establish a conspiracy existing between appellant and his co-defendants to murder Reuben Morris. In *Nelson Post* v. *State,* 10 Texas Ct. App. 600, this court say the evidence fully established the conspiracy between Jack and Nelson Post to murder McDermott. It is settled that although the charge of the court may not be entirely free from objection, yet if, as a whole, it leaves all the facts to the determination of the jury, the judgment will not be reversed. *Ross* v. *State,* 29 Texas, 498.

Eliminate the testimony of Sartain from the record, and the evidence taken as a whole — the circumstantial and direct testimony — points to the guilt of appellant and his co-defendants, to the exclusion of any reasonable doubt. The circumstances as detailed from different standpoints, from different points of observation by different witnesses, are unique in their agreement and corroborate and sustain the parol testimony offered by the State. It is not shown by the record, or in the able and learned argument by counsel, that appellant sustained any injury from the introduction of the testimony and the charge of the court assigned as error.

White, P. J. On the former appeal in this case, where the verdict and judgment were the same as on this appeal, viz., murder in the first degree with imprisonment for life in the penitentiary, the judgment was reversed and the cause remanded for a new trial because of the admission of incompetent evidence against the defendant. 8 Texas Ct. App. 434.

Two jurors, Lass and Sterns, were challenged for cause by defendant, and the challenge was overruled by the court and defendant compelled to exhaust peremptory challenges upon them, which he did, and thereby succeeded in ridding himself of them. But it is insisted

that, inasmuch as defendant exhausted all his peremptory challenges before the panel was finally completed, therefore the action of the court with regard to these particular jurors will be considered, and if erroneous the case will be reversed on account of it. But it is not made to appear that any objectionable juror was put upon him after he had exhausted his peremptory challenges. This question has been passed upon repeatedly by this court, and a rule established which we see no reason to change. As stated concisely in Holt's case, it is that "unless objection is shown to one or more of the jury who *tried* the case, the antecedent rulings of the court upon the competency or incompetency of jurors who have been challenged and stood aside will not be inquired into in this court. But if one objectionable juror is forced upon the defendant after he exhausts his peremptory challenges, then he will be entitled to have the action of the court reversed" as to any juror against whom objection was urged which should have been sustained. *Holt* v. *State*, 9 Texas Ct. App. 571. ' See also *Myers* v. *State*, 7 Texas Ct. App. 653; *Grissom* v. *State*, 8 Texas Ct. App. 386; *Hollis* v. *State*, 8 Texas Ct. App. 620; *McKinney* v. *State*, 8 Texas Ct. App. 626; *Cock* v. *State*, 8 Texas Ct. App. 659. We find no error in this matter.

In the fourth assignment, which is the error mainly relied on and earnestly and ably argued in the brief of appellant, it is contended that "it was error to permit the witness S. H. Sartain to give in evidence the declarations of Reuben Loggins."

The witness was called by the State, and said that some two or three weeks before the murder he had some papers turned over to him by Reuben Loggins. Said Loggins had some years before conveyed certain lands to deceased, and had received from him an instrument reciting that they were held only in trust. At Reuben Loggins's request, witness drew deeds from deceased to appellant,

reconveying the lands; these deeds were willingly executed by deceased. It was afterwards discovered that a tract of two hundred and twenty-five acres of land had been omitted by mistake. A few days before the killing Reuben Loggins asked witness to prepare a deed for this tract also. The signing of this deed was delayed by causes needless to mention, as they do not bear on the case. On the day before the killing Reuben Loggins came to see witness, and witness's wife told him that the deed could be signed next morning. As Reuben Loggins left he said: "Sartain, your course is right; you go on as you have done and you will be all right. *Everything will be settled between me and Reuben Morris in twenty-four hours.*"

Defendant was not present and had not had anything to do with the making or signing of the deeds. The deeds were ordered to be made to him by Reuben Loggins's instructions.

Defendant objected to the evidence "because he was not present; that he was alone upon trial; that there was no evidence of a conspiracy or combination between him and Reuben Loggins, and the declarations of Reuben Loggins were not evidence against him and were irrelevant, and were calculated to injure him and prejudice his case." The State did not offer to show that other evidence would be afterwards introduced to show a conspiracy between the parties. The court overruled the objection, saying he would control it in a charge to the jury.

With regard to conspiracies to commit illegal acts so as to make the acts and declarations of any one binding upon a co-conspirator, the rule as it formerly obtained was that the existence of the conspiracy should first be made by proof sufficient, in the opinion of the judge, to establish *prima facie* the existence of such fact. 1 Greenlf. Evid. § 111. But, as was held in *Winner* v. *State*, 17 Kans. 298: "This cannot always be required. It cannot well be re-

quired where the proof depends upon a vast amount of circumstantial evidence,— a vast number of isolated and independent facts. And in any case where such acts and declarations are introduced in evidence, and the whole evidence introduced on the trial, taken together, shows that such a conspiracy actually exists, it will be considered immaterial whether such conspiracy was established before or after the introduction of such acts and declarations." *Davis* v. *State*, 9 Texas Ct. App. 363. See this whole subject fully discussed in *Cox et als.* v. *State*, 8 Texas Ct. App. 256.

After the evidence is all in, however, it may be asked whether the court or jury is to determine the existence or non-existence of the conspiracy? We think it may be stated as a general rule that in criminal cases there is under our system of procedure no conclusion or presumption of fact, except in certain cases specified in the Codes, which is not entirely within the disposal of the jury; for it is expressly provided that "the jury in all cases are the exclusive judges of the facts proved and of the weight to be given to the testimony, except where it is provided by law that proof of any particular fact is to be taken as either conclusive or presumptive proof of the existence of another fact, or where the law directs that a certain degree of weight is to be attached to a certain species of evidence." Code Crim. Proc. art. 728.

As to the acts and declarations of one of a company of conspirators, in regard to the common design as affecting his fellows, Mr. Greenleaf says: "Here a foundation must first be laid by proof sufficient, in the opinion of the judge, to establish *prima facie* the fact of conspiracy between the parties, *or proper to be laid before the jury as tending to establish such fact.*" 1 Greenlf. Ev. § 111. On the former appeal in this case this court said, Judge Clark delivering the opinion: "A conspiracy, like crime itself, is susceptible of proof by circumstances which are

addressed to the trial judge in the first instance when called to rule upon the competency of the testimony. And after the acts or declarations of a co-conspirator not upon trial are admitted in evidence, and the evidence as to the existence of a conspiracy at the time such acts were done and declarations were made is not conclusive, the question as the existence of such conspiracy at the time of the acts or declarations should be submitted to the jury under appropriate instructions, with directions to disregard such evidence in case the conspiracy had not been established to their satisfaction." 8 Texas Ct. App. 434. And he cites *Ormsby* v. *The People*, wherein it was held that, to make the acts and obligations of an alleged confederate competent evidence against a prisoner, such evidence must be given as to prove *prima facie* that the two had conspired together to commit the offense charged, or as to make that question one proper for the determination of the jury. 53 N. Y. 472.

Upon this branch of the case and with reference to the evidence objected to, the court charged the jury that "the declarations of Reuben Loggins or Williford Loggins, and the declarations of Reuben Loggins made to the witness Sartain concerning the settlement of everything between him and Reuben Morris in twenty-four hours, admitted in evidence, you will not consider as evidence and entirely reject them all, unless you believe, at the time, there was then existing a conspiracy of Reuben Loggins and others to take the life of said Morris. If there was such a conspiracy, and you should believe Henry Loggins joined the same and did engage therein, then the declarations of all parties engaged in such conspiracy, made pursuant and in furtherance of said conspiracy, are evidence."

As we have seen, this charge was correct and properly submitted the question of conspiracy *vel non* to the jury.

Upon the sufficiency of the evidence to support the

verdict and judgment, we deem it only necessary to say that there was ample evidence adduced by the State which, if the jury believed it true, warranted them in their finding. They were the exclusive judges of its truth, credibility and weight.

We have not discussed other matters, because they are not considered of such serious importance upon the question of the guilt or innocence of defendant as would materially affect the result of another trial, even if the judgment was reversed and a new trial awarded. We find no error requiring a reversal and new trial, and the judgment is therefore in all things affirmed.

*Affirmed.*

HURT, J., does not concur.

[After the foregoing opinion was rendered, and near the close of the term, Seth Shepard, Esq., of counsel for the appellant, filed a motion for a rehearing, and urged it in an instructive argument. The court took the motion under advisement and transferred it to the Austin branch, where the motion was overruled and the following opinion delivered.— REPORTERS.]

WHITE, P. J. But a single question is argued and submitted for our consideration in the motion for rehearing. In the able, earnest and interesting argument of counsel for appellant we are asked not only to recede from the opinion delivered in this case, but to overrule several previous opinions which are in harmony with and fully support it. It is insisted that a grave error is contained in the doctrine enunciated that a case will not be reversed for errors committed in the lower court in overruling challenges for cause to jurors, even though defendant exhausted his peremptory challenges, unless it is further shown that an objectionable juror was forced

upon him and sat upon the case after he had exhausted his peremptory challenges.

In other words, carried to its legitimate extent, the position assumed is that error of decision as to a juror's qualification is not waived by peremptory challenge, and is not cured by the subsequent exclusion of the juror, although the prisoner had not exhausted his peremptory challenges even to the last. We are aware that such is the rule in some of the States; for instance, in Virginia, see Lithgow's case, 2 Va. Cases, 297, Sprouce's case, Id. 375, *Dowdy* v. *Commonwealth*, 9 Gratt. 727; and it has been held in New York. See *People* v. *Bodine*, 1 Denio, 281. In most of the other States the rule is otherwise, and the doctrine well established is that if an incompetent juror is selected upon the jury, and the prisoner fails to exhaust his peremptory challenges, the objection is waived. *McGowan* v. *State*, 9 Yerg. (Tenn.) 184; *Carroll* v. *State*, 3 Humph. 315; *Moses* v. *State*, 10 Humph. 456; *Alfred & Antony* v. *State*, 2 Swan, 581; *Preswood* v. *State*, 3 Heiskell, 468; *Morton* v. *State*, 1 Kans. 468; *Stewart* v. *State*, 13 Ark. 742; *Benton* v. *State*, 30 Ark. 328. And so it has been held time and again in Texas. *Burrell* v. *State*, 18 Texas, 713; *Johnson* v. *State*, 27 Texas, 758; *Bowman* v. *State*, 41 Texas, 417; *Sharp* v. *State*, 6 Texas Ct. App. 650; *Bejarano* v. *State*, 6 Texas Ct. App. 265; *Tuttle* v. *State*, 6 Texas Ct. App. 556; *Krebs* v. *State*, 8 Texas Ct. App. 1.

But it is said that the case before us differs from all these cases in this, that the bill of exceptions here shows that defendant did exhaust all his peremptory challenges, and has been deprived of his right to peremptorily challenge one of the jurors who sat upon the trial afterwards. This was the doctrine held in *State* v. *Brown*, 15 Kans. 400, which was cited, commented upon and controverted by us in *Holt* v. *State*, 9 Texas Ct. App. 571, we holding that, instead of being deprived of a right, the bill of ex-

ceptions showed, on the contrary, that he had exercised his right to every peremptory challenge which the law gave him. The law gives him twenty peremptory challenges (Code Crim. Proc. art. 635) and no more. He uses his twenty peremptory challenges. After using them is it not the veriest solecism to say he has been deprived of his right to use them. But it is said you have forced him to use them upon incompetent and disqualified jurors, and in that manner you have deprived him of the use of them for the purposes for which the law gave them to him; that is, to rid himself of jurors who were not obnoxious for cause. The argument is specious but in our opinion unsound. It is true the law says, "a peremptory challenge is made to a juror without assigning any reason therefor" (Code Crim. Proc. art. 634); but it nowhere prohibits a defendant from using them where he has a reason for or cause to rid himself of a juror. In other words, the law nowhere says he cannot and shall not use his peremptory challenge on a disqualified juror. On the contrary, he may do so or not, just as he sees fit. If he does so, he has excluded the juror and has gotten rid of him and the objection, and consequently has no just ground to complain. If he does not, then he waives his objection and cannot complain until he has shown the exhaustion of his peremptory challenges, and that he has had an obnoxious juror put upon him whom he could not get rid of.

Blackstone explains the reasons why the right of peremptory challenge was conferred by the law of England. He says: "In criminal cases, or at least in capital ones, there is *in favorem vitæ* allowed to the prisoner an arbitrary and capricious species of challenge to a certain number of jurors, without showing any cause at all; which is called a *peremptory* challenge,— a provision full of that tenderness and humanity to prisoners for which our English laws are justly famous. This is grounded

on two reasons: 1. As every one must be sensible what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another, and how necessary it is that a prisoner (when put to defend his life) should have a good opinion of his jury, the want of which might totally disconcert him, the law wills not that he should be tried by any one man against whom he has conceived a prejudice even without being able to assign a reason for such his dislike. 2. Because, upon challenges for cause shown, if the reason assigned prove insufficient to set aside the juror, perhaps the bare questioning his indifference may sometimes provoke a resentment, to prevent all ill-consequences from which a prisoner is still at liberty, if he pleases, peremptorily to set him aside." 2 Cooley's Black. Book IV, p. 353. So that one of the original and main objects of the right was to afford protection against the consequences of an ineffectual effort to get rid of a juror for cause.

Another mistake made by those urging that the defendant is deprived of the right to challenge one of the jury after exhausting his peremptory challenges on incompetent jurors is that the right of peremptory challenge is given to enable him *to select* a jury. Such is not the case. In *The U. S.* v. *Marchant*, Mr. Justice Story says: "The right of peremptory challenge is not of itself a right to select but a right to reject jurors. It excludes from the panel those whom the prisoner objects to, until he has exhausted his challenges. . . . The right therefore of challenge does not necessarily draw after it the right of selection, but merely of exclusion. It enables the prisoner to say who shall not try him, but not to say who shall be the particular jurors to try him." 12 Wheat. 430.

Discussing the result which follows the use of a peremptory challenge on an incompetent juror, the Supreme

Court of Arkansas say: "But in the case of *Bodine* v. *The People* (1 Denio, 281) it did appear that the prisoner had challenged but thirteen jurors peremptorily although she might have challenged twenty, and it was argued that she was not bound to have accepted a juror erroneously decided to be competent upon her challenge for cause, but might and ought to have corrected the error by availing herself of the peremptory challenges allowed her by law for that purpose. The opinion of the court was that in no case is the prisoner bound to resort to his right to make peremptory challenges, but he may exercise it according to his judgment or caprice. It is for his own exclusive consideration and decision, and the court has no right to interfere with his determination. The question was to be considered as if she had no right of peremptory challenge, and as if the acceptance of the juror was forced upon her in consequence of the erroneous decision, and then she would stand upon the legal exception. It follows from this reasoning that if the party chooses to challenge the juror peremptorily when he is not obligated to do so, he by the exercise of his own will or caprice has undertaken to correct the supposed error of the court and waived the benefit of the previous exception. Because, if the decision was right the party excepting would not have been injured by it; if it was wrong he had the benefit of his exception; but if at the time in doubt whether it be right or wrong, and he prefers to take the chances for an acquittal, and so elects to rid himself of the obnoxious juror by a peremptory challenge, there is no reason for holding that he can avail himself on error of the exception thus abandoned. And so the Supreme Court of New York decided in the subsequent case of *Freeman* v. *The People*, 4 Denio, 1.

"Referring to the case in 1 Denio, 310, Judge Beardsley, who delivered the opinion of the court in both cases, said ' the prisoner was free to use his peremptory chal-

lenges as he thought proper, but having resorted to them, they must be followed out to all their legitimate consequences. Had he omitted to make peremptory challenges, his exceptions growing out of the various challenges for cause would have been regularly here for revision. But he chose by his own voluntary act to exclude these jurors, and thus virtually and, as I think, effectually wiped out all such errors, if any, as had previously occurred in regard to them.'" 13 Ark. 720. The same reasoning will be found in *Morton* v. *State*, 1 Kans. 468.

Whilst the rule in Texas differs from the one above stated in that no ineffectual challenge for cause can be availed of until after all peremptory challenges have been exhausted, still, as we shall see, in principle the same argument holds good under our practice.

Our Constitution guaranties that "in all criminal prosecutions the accused shall have a speedy public trial *by an impartial jury.*" Const. art. 1, Bill of Rights, sec. 10. Not that the accused shall have just such a jury as he wants, — but an impartial one. When that end is attained in the selection of the jury to try him, the measure of his constitutional right is accomplished. To enable him to get this impartial jury, the law has wisely and humanely prescribed the requisite qualifications for good and impartial jurors, and has declared those incompetent who do not come up to the standard. Moreover, she has given him the right to challenge any one for any one of the causes of disqualification enumerated in the statute. "A challenge for cause is an objection made to a particular juror, alleging some fact which renders him unfit to serve on the jury." Code Crim. Proc. art. 636. These challenges for cause are unlimited and inexhaustible; just as long and as often as they can be urged to an obnoxious juror, just so long does the right exist. But, though his right to make the challenges is unlimited, the mere fact of challenge does not entitle him to have the

juror stood aside. His cause of challenge may or may not be true in fact. Whether it is or not is a matter to be decided by the judge presiding, the statute having provided further that "the court is the judge, after proper examination, of the qualifications of a juror, and shall decide all challenges without delay and without argument thereupon." Code Crim. Proc. art. 641. In addition to his unlimited right of challenge for cause, as a matter of favor and grace the law gives the defendant twenty peremptory challenges, which he can use at his pleasure, without assigning any reason therefor. Code Crim. Proc. arts. 634, 635. It is entirely a voluntary matter with him whether he uses them or not. But, as stated by Blackstone, one of the reasons they were given him by the law was that he might be enabled to use them in getting rid of a juror he has ineffectually endeavored to challenge for cause.

Now, suppose the court below has committed an error in its rulings on the qualifications of jurors, how and under what circumstances can the accused avail himself of the error and have it revised and corrected on appeal? In *Holt* v. *State* this court held that unless objection is shown to one or more of the jury who tried the case, the rulings of the trial court upon the competency or incompetency of jurors will not be inquired into in this court, even though the defendant had exhausted his peremptory challenges. 9 Texas Ct. App. 571. In *Cotton* v. *State*, 32 Texas, 642, it was said "the court cannot regard the objection to the ruling of the court upon the competency of a juror as a valid one, unless the accused had been thereby compelled to accept an objectionable juror, after the exhaustion of his right of challenge." In *Myers* v. *State*, 7 Texas Ct. App. 653, it is said: "The substance of the statement is that four persons were placed upon the jury after the defendant's peremptory challenges had been exhausted, but there is no pretense that either of these four persons were in any manner objectionable to

the defendant, nor is it made to appear that they or either of them would have been challenged peremptorily if his challenges had not been exhausted. By this ruling it is not seen that the defendant was deprived of any right guarantied to him by the law."

And in Tooney's case, 8 Texas Ct. App. 457, it was said: "So in the present case, even if in our opinion the court had in fact erred in overruling the challenge for cause of the proffered jurors, Williams and others, still such error would be no cause for the reversal of the judgment, for the reason that they, being peremptorily challenged, did not form any part of the jury by whom the verdict was rendered, and because it is not shown that the juror Orrick, who was placed on the jury after the defendant's peremptory challenges had been exhausted, was not a fair and impartial juror, or that because of his presence on the jury the trial was not fair and impartial as to both the State and the defendant."

In Rothschild's case, 7 Texas Ct. App. 519, it was held a reversable error to overrule a good challenge for cause to the juror Sanders. The language of the court is: "And thereupon the court again overruled the challenge for cause, and the defendant challenged peremptorily, but, having exhausted his peremptory challenges, the juror was sworn and took his seat upon the jury."

We are asked to overrule these cases, or, rather, the doctrine thus enunciated by them. A mature reconsideration of the subject, in connection with this motion for rehearing, has only tended to confirm and strengthen us in the correctness of the doctrine thus stated. We are unable to perceive how the accused is deprived of any legal right by the ruling. Certainly not as to any of his peremptory challenges, for, as we have seen, he has had the full benefit of 'all the law allows him. Nor can he complain that he has been deprived of a valid challenge for cause, because as to that he has rid himself of the cause by his peremptory challenge. Moreover, the court

below has decided that his challenge for cause was not good, and *prima facie* the ruling was correct. If not, then why did he not stand upon the validity of the challenge without resorting to a peremptory one ? and then and in that event, if the juror was impaneled and his peremptory challenges afterwards exhausted, he would reasonably have had good ground for complaint, and one which could and would be heard and corrected in this court. Simply to be overruled in a good challenge for cause cannot deprive him of a material right; for challenges for cause are inexhaustible, and the overruling of one cannot deprive him of another, even though his peremptory challenges may be exhausted. So long as there exists a cause, just so long has he the right to challenge, and no deprivation of the right as to one juror can possibly affect the right as to another.

But it is said he might· have wanted to use the peremptory challenge on one of the final panel. This is mere speculation, and, if permitted to be indulged, might be urged indefinitely. The simple question, after the peremptory challenges are exhausted, is,—"is the jury which finally tries the case impartial ?" If so, we cannot imagine that the accused has any just ground of complaint with regard to it. All that the Constitution, all that the law requires and demands is a trial "by an impartial jury." If he makes no complaint or has no complaint to make of it as finally organized, the presumption is legitimate that it is impartial. We have discussed the question at length because it is an important and has been a vexed one up to the past few years. But, as seen, for several years past it has been settled, and settled in our opinion upon principles of justice, right and law. We see no occasion to change the rule, and therefore the motion for rehearing is overruled.

*Motion overruled.*

HURT, J., dissents.